EVA GIBSON GRAHAM et al. v. STATE.

No. A-5123.   Opinion Filed June 27, 1925.
(237 Pac. 462.)

Carter & Carter, for plaintiffs in error.

George F. Short, Atty. Gen., and Charles Hill Johns, Asst. Atty. Gen., for the State.

DOYLE, J.  In the information in this case, filed in the county court of Okmulgee county, on July 28, 1923, Eva Gibson Graham and Charlie Cheshire were charged with unlawfully transporting intoxicating liquors from some place unknown to informant to the corner of North Okmulgee and Fairfax avenues, in the city of Okmulgee. On the trial the jury returned verdicts finding the defendants guilty and fixing their punishment as follows: Eva Gibson Graham, confinement in the county jail for 60 days, and a fine of $250; Charlie Cheshire at confinement in the county jail for 30 days and a fine of $50.

To reverse the judgments rendered on the verdict they appeal and assign as error that the trial court erred in admitting incompetent evidence over the objections of the defendants, and in refusing to strike such evidence, and in overruling the demurrer of the defendants to the evidence of the state at the close of the state's case, and that the verdict of the jury is contrary to both the law and the evidence, and not supported by either.

E. J. Scott, policeman, testified that he was in a car with Elmer Cole, another peace officer, near the corner of Okmulgee and Fairfax avenues about 2 p. m., and saw the

defendants go north from Okmulgee on the paved highway —the man was driving the car. That witness "had a suspicion that they were going after liquor." In about 30 minutes they returned, and when he saw them coming he started the motor, and they sat there waiting for them to come up. That he blew his whistle, and commanded them to stop, and they started running through the fair grounds. "We followed them, when they started to breaking we started to shooting, and that stopped them. We searched the car and did not find anything." That he picked up a broken quart bottle, and "there were two or three spoons full of corn whisky where it was broken."

The defendants moved to strike all the evidence, for the reason that he arrested them without a warrant; that it was an arrest by force, without authority of law, and search made in violation of their constitutional rights. The motion was overruled; exception reserved.

It is argued that the arrest of the defendants and search of their persons and of the car was without sufficient warrant in law, and therefore unlawful, and evidence obtained in this way is inadmissible.

The constitutional provisions particularly relied upon by the defendants are as follows:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided." Const. art. 2, § 21.

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures, shall not be violated." Const. art. 2, § 30.

These constitutional provisions were under consideration in the case of Keith v. State, 30 Okla. Cr. 168, 235 P. 631. In the opinion it is said:

"The offense charged against the defendant is punishable only by a fine and imprisonment in the county jail, and

therefore is not a felony under our statute. Section 1503. Consequently the officers could not lawfully arrest him therefor without a warrant, unless the offense was committed or attempted in their presence.

"It cannot be said that the criminal offense is committed in the presence of an officer, unless the acts constituting the offense become known to him at the time they are committed, through his sense of sight or through other senses; although a person may actually be committing a criminal offense, it is. not committed in the presence of an officer within the meaning of the statute, if the officer does not know it. And where the officer could not observe and become cognizant of the act constituting the offense by the use of his senses, it could not be committed in his presence so as to authorize an arrest without a warrant."

The fact that the defendants were transporting intoxicating liquor not being discoverable without a search, the offense of transporting it was not committed in the presence of the officers, and they had no authority to arrest the defendants therefor without a warrant.

It is the well-settled doctrine in this state that no search of the person or seizure of any article found thereon can be made on mere suspicion that the person is violating the prohibitory liquor laws in having intoxicating liquor in his possession, or without a search warrant, unless and until the alleged offender is in custody under a warrant of arrest, or shall be lawfully arrested without a warrant as authorized by law. Keith v. State, 30 Okla. Cr. 168, 235 P. 631, and cases cited. But it is argued that the arrest in this case was lawful because the officers saw the bottle thrown from the car before they arrested the defendants, citing McAdams v. State, 30 Okla. Cr. 207, 235 P. 241. In this case the information charges transportation from a place unknown to the place where the officers attempted to arrest the defendant, and it was for that they were arrested.

The state admits that the attempted arrest was un-

lawful. The intimidation and the felonious assault made by the officers upon the defendants by shooting at them was unlawful, and in this way and by such lawless acts the arrest was accomplished and the evidence obtained.

In the case of Sharp v. U. S., 6 Okla. Cr. 350, 118 P. 675, this court held that—

"A peace officer in attempting to arrest a person for an offense less than a felony cannot shoot or kill, unless the offender resists to such an extent as to place the officer in danger of loss of life or great bodily harm."

In the opinion it is said:

"It is the common belief that erroneously prevails among petty peace officers that, if an offender runs from an officer attempting his arrest for a misdemeanor and does not stop on being commanded to halt, the officer may lawfully shoot him. Officers should know and understand that they have no authority to resort to the use of fire arms or dangerous weapons in making arrests for offenses other than felonies, unless the offender resists the arresting officer. In that event all force necessary to overcome his resistance may be employed."

An officer seeking the enforcement of one law should not violate another in order to accomplish his purpose. Such conduct brings the administration of justice into disrepute, and tends to the subversion of peace and good order.

It is elementary that a confession of guilt obtained by duress is not admissible in evidence. The genius of our free institutions requires that the admissions of the accused shall not be used against him, unless made voluntarily.

However, if a confession is freely and voluntarily made, without duress or promise of reward, it is admissible against the defendant, so we see that the legality or illegality of the means employed to obtain the confession determines whether it may or may not be admitted.

"An unreasonable search is an examination or in-

spection without authority of law of one's premises or person with a view to the discovery of stolen, contraband or illicit property, or for some evidence of guilt to be used in the prosecution of a criminal case." 24 R. C. L. 717.

The admitted acts of the officers satisfy the call of this definition; that is, they acted without authority of law, no search warrant having been issued; and the unlawful arrest was for the sole purpose of obtaining evidence to be used in the prosecution of the defendants.

The two constitutional provisions here invoked are quite closely interwoven, and, generally, as in this case, that which is obtained by unlawful arrest and unlawful search is subsequently attempted to be used to incriminate him from whom so obtained; the one violation being but a preface to the other.

For the reasons stated, we are of opinion that the evidence objected to in this case was obtained by the officers without warrant of law, and the admission of the same constitutes a violation of the constitutional rights of the defendants under section 21 of the Bill of Rights.

The judgments of the lower court are therefore reversed and cause remanded, with directions to discharge the defendants.

BESSEY, P. J., and EDWARDS, J., concur.