## LYONS v. WORLEY et al.

No. 19421. Opinion Filed Sept. 22, 1931.

Rehearing Denied Oct. 20, 1931.

Young & Powell, for plaintiff in error.

Mac Q. Williamson, for defendants in error.

SWINDALL, J. This is an appeal from an order overruling the motion of the plaintiff for a new trial in an action of false imprisonment. Several errors are assigned which the plaintiff claims would entitle him to a new trial, but the vital question is whether the arrest without a warrant was authorized or unauthorized.

The plaintiff complained of an arrest made November 26, 1924, in the town of Paoli by the defendant Perry Pierson, acting as a deputy sheriff, and the defendant J. C. Gross, each of them acting under instructions from C. F. Worley, who was sheriff of Garvin county, and of C. E. Vaut, who was a deputy sheriff and jailor of Garvin county, the detention continuing until about nine o'clock the next night.

The arrest grew out of a collision between an automobile driven by the plaintiff and a team driven by the defendant Gross in which one of the horses of Gross was so injured that it was necessary to kill it and some little other property damage was done. The lights of plaintiff's automobile had gone out and he was driving in the dark about a mile and a half north of Paoli and was on the wrong side of the road when the collision occurred.

The answer admitted that the plaintiff was arrested by Gross and Pierson and alleged that "at the time of his arrest he was engaged in a violation of the law in their presence and that they exercised no more force than was necessary to restrain him and conduct him to the county jail, where he was restrained that he might answer for his said misconduct upon the public road, which consisted of driving in a careless, reckless, and negligent manner in disregard of the statutory rules of the road, upon the wrong side of the road, and in driving his automobile into the team and wagon of the said J. C. Gross." The answer then alleged that the plaintiff was first restrained and warned not to leave the scene of the collision by the defendant J. C. Gross, "that he willfully and wantonly left, and upon being asked at Paoli by the defendant Pierson about his careless driving and the colli-

sion incident thereto he burst into a volley of loud and disturbing profanity in a public place, and that he was thereupon restrained for his said conduct as aforesaid."

There was not much controversy as to the material points upon which the authority to arrest turns; in fact, no controversy as to the essential facts as to authority.

It was conceded that after the accident and some little talk about settlement, Gross told the plaintiff not to leave. Then, later, after it had been agreed that they would take up the matter of settlement in Paoli, the plaintiff expressed an intention of going on to Paoli and waiting for Gross. Gross testified that he told the plaintiff to stay where he was and then go in with him. After the plaintiff started for Paoli, Gross telephoned Pierson and asked him to stop a man driving a "blind" car. The plaintiff drove immediately to a garage in Paoli and arranged to have the car stored, intending that when he went home to Sulphur he would leave the car as an evidence of good faith. Pierson found him in the garage. There is a dispute as to just what was said then. The plaintiff and the garage owner testified that Pierson inquired if the plaintiff was the man who had run into Gross and on receiving an affirmative reply said that he had orders to hold the plaintiff. Pierson testified that he asked the plaintiff if he was the man who was driving without lights and had run into Gross and that the plaintiff replied, "Yes, by God, I am," and that he then asked plaintiff to wait until Gross came into town.

There is a dispute as to whether the plaintiff was then put under actual restraint, Pierson denying it. Gross also denied that he arrested the plaintiff at the scene of the collision, and it is clear that he did not. He had told him to wait in a conversation only about a settlement as to damages. Gross denied putting the plaintiff under arrest, and in answer to the question, who did arrest the plaintiff, replied that it was Pierson. However, the evidence shows that after Gross' arrival at Paoli it was agreed between him and Pierson that the plaintiff should be held until he settled.

The plaintiff made several attempts by telephone to get matters arranged, without avail, and about eleven o'clock he expressed to Pierson and Gross his intention to go home to Sulphur, and it is admitted that he was then told that he could not go. The defendant Pierson then told him that he had talked with the sheriff and had been told to let the plaintiff go if he settled, but if he did not settle to bring him down to Pauls Valley, and that he had also talked with the county attorney and received the same instructions. The sheriff admitted telling Pierson to bring him down and saying that if he was driving without lights and driving on the wrong side of the road it constituted two charges.

The plaintiff was held in jail until about nine o'clock p. m. Thursday, the following night, when he was released through the efforts of Mr. Osborn, an attorney employed by the telephone company, by whom the plaintiff says he was told that his release was obtained upon the assurance that he would remain in Pauls Valley until settlement for the collision had been made. The settlement was made Friday by the payment by the telephone company of $125 paid through the firm in which Mr. Osborn was a partner.

There was a total failure of evidence to sustain the claim of justification that the plaintiff was arrested by Gross at the scene of the accident.

(1) So far as the answer is concerned, it is doubtful if it constituted a claim that there was a justification for the arrest because of the profanity. It is unnecessary to decide that, for it is clear that he was not arrested because of profanity. Nowhere in the evidence is any reason assigned for the arrest except that it was for an alleged misdemeanor in violating the road laws. There was little evidence of the use of profanity, and it is unnecessary to give it consideration as a justification, as an arrest cannot be made upon one ground and justified on another. Malcolmson v. Scott, 56 Mich. 459, 23 N. W. 166; Snead v. Bonnoil, 166 N. Y. 325, 59 N. E. 899; Comisky v. N. & W. R. Co., 79 W. Va. 148, 90 S. E. 385, L. R. A. 1917D, 220; Jones v. Van Bever, 164 Ky. 80, 174 S. W. 795, L. R. A. 1915E, 172; Holmes v. Blyler, 80 Iowa, 365, 45 N. W. 756; Elwell v. Reynolds, 6 Kan. App. 545, 51 Pac. 578; Boaz v. Tate, 43 Ind. 60. But evidence of the other ground is admissible in mitigation of damages. Comisky v. N. & W. R. Co., supra.

It is unnecessary to go into the conflicting evidence as to just what was said between Pierson and the plaintiff in the garage or other conflicts prior to the plaintiff's declaration of his intention to go home, as it is admitted that he was arrested then, and the evidence shows no justification for having arrested him for a violation of the road laws then or at any other time after he had arrived at Paoli.

(2) The only justification for an officer for an arrest without a warrant for a mis-

demeanor, which was the manner in which this arrest was made, is set forth in section 2471, C. O. S. 1921, which reads as follows:

"2471. Arrest without warrant. A peace officer may, without a warrant, arrest a person:

"First. For a public offense, committed or attempted in his presence.

"Second. When the person arrested has committed a felony, although not in his presence. •

"Third. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"Fourth. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

It will be observed that all but the first clause relates exclusively to arrests for felonies, so that the only justification for an arrest for a misdemeanor is under the first clause, which permits the arrest for a public offense, committed or attempted in the presence of the officer. This arrest did not come literally within the terms of the statutory authority, for the offense was not committed within the actual presence of the officer or a presence near enough for him to have possibly been conscious of it from a conception through any of his own senses at the time of its commission.

(3) However, it is contended in the brief that, since there is evidence that Pierson confessed to the misdemeanor in Paoli, the case is governed by the decision in Miles v. State, 31 Okla. Cr. 4, 236 P. 907: In that case the second syllabus paragraph reads as follows:

"An offense is committed or attempted 'in the presence of an officer,' within the meaning of the law, where such officer is apprised by any of his senses that a misdemeanor is being committed or attempted, or by information of such fact communicated by the person arrested prior to his arrest"

—and in the body of the opinion the court expressed itself as follows:

"We think that, if a suspected person informed an officer that he is engaged in the commission of a misdemeanor, although the visual, auditory or olfactory proof is not evident, the officer is justified in acting on the information of the person suspected, although he cannot have the right to act on the information of any other person. Information by the person amounts to an admission, or to a waiver of knowledge derived through the ordinary senses."

It is evident that the case does not sustain the contention. That case was reported also in 30 Okla. Cr. 302, 236 P. 57, 44 A. L. R. 129, and note, at pages 132 and 159, and the note contains no reference to any case where an admission was involved which was not made to the officer during the commission of the offense, the question in all of the cases being what constituted "presence of the officer," because the law permitting arrests without warrant for an offense committed in his presence requires a consciousness of the commission of the offense and has never been held to authorize arrests on mere suspicion. That case decided only that an admission apprised the officer and therefore supplied that essential condition to arrest for a crime actually committed when he was personally present, knowledge. See on the point that knowledge is required even when the officer is present, Graham v. State, 31 Okla. Cr. 125, 237 P. 462. There is nothing in the history of the law at all indicating that an admission made after the commission of the offense would justify an arrest without a warrant. Originally such arrests were not permitted generally for misdemeanors, but only to preserve the public peace. Such arrests were permitted only to prevent, stop, or prevent an attempted recurrence, of such misdemeanors as constituted breaches of the peace. 2 R. C. L., Arrest, sec. 4, pp. 447-8; 5 C. J., Arrest, sec. 31, pp. 401-2, and cases cited infra herein. And even in such cases immediate arrest only was authorized and it could not be made for past breaches of the peace without a warrant. Such arrest was clearly beyond the reason underlying the authority. 2 R. C. L., Arrest, sec. 7, p. 451; 5 C. J., Arrest, sec. 31, p. 406; People v. Johnson, 86 Mich. 175, 48 N. W. 870, 24 A. S. R. 116, 13 L. R. A. 163 and note; Bright v. Patton, 5 Mackey (D. C.) 534, 60 Am. Rep. 396; McCullough v. Greenfield, 133 Mich. 463, 95 N. W. 532, 1 Ann. Cas. 924, 62 L. R. A. 906; Delafoile v. State, 54 N. J. Law, 381, 24 Atl. 557, 16 L. R. A. 500; State v. Hunter (N. C.) 8 L. R. A. 530, note; State v. Williams, 45 Ore. 314, 77 Pac. 965, 67 L. R. A. 166. Such was the condition of the common law at the time of the enactment of our statute, and while the codifiers of our law saw fit to extend the authority to arrest without a warrant to all public offenses, which includes all misdemeanors whether constituting breaches of the peace or not, they did not see fit to extend the authority as has been done in some states to offenses not attempted or committed in the presence of the officer. and such extension could not be made by this court except by bald judicial legislation.

60

(4) We know of no holding that where authority to arrest without a warrant for a misdemeanor did not otherwise exist the authority could be justified to prevent an escape. In this state the contrary has been specifically held. In the case of Collegenia v. State, 9 Okla. Cr. 425, 132 P. 375, it was said:

"A peace officer making an arrest without authority to do so occupies the same relations to the party arrested that any other private citizen would. He is a trespasser who has no right to detain the person, and hence no right to prevent an escape, and in preventing an escape he is still a trespasser."

If prevention of escape were a ground of arrest for misdemeanor, arrest on hue and cry would not have been limited to felonies by the common law.

(5) An officer, in the absence of statutory authority, making an arrest without a warrant for a misdemeanor not attempted or committed in his presence, is liable in damages for trespass and false imprisonment. Bright v. Patton, supra; Griffin v. Coleman, 4 Hurlst. & N. 265, 28 L. J. Exch. N. S. 134; Scott v. Eldridge, 154 Mass. 25, 12 L. R. A. 379, 27 N. E. 677; Malcolmson v. Scott, supra; Kennedy v. Favor, 14 Gray (Mass.) 200; Bowditch v. Balchin, 5 Exch. 378, 19 L. J. Exch. N. S. 337; Lamb v. Stone, 95 Wis. 254, 70 N. W. 72.

This case is unfortunate in two respects: In the first place it is unfortunate for an officer who held the unblemished record held by this sheriff for years to have so overstepped legal authority in making the arrest, and, in the second place, it is deplorable that, as the record clearly shows. the arrest was not made to really hold the plaintiff to answer for the misdemeanor, but to force him to make a settlement for a civil wrong. The judgment of the lower court is reversed, with instructions to grant the plaintiff a new trial, and take such other and further proceedings as may be consistent with the rule of law herein stated.

LESTER, C. J., and RILEY, CULLISON, McNEILL, and KORNEGAY, JJ., concur. CLARK. V. C. J., not participating. HEFNER and ANDREWS, JJ., absent.

See under (2) Annotation in 51 L. R. A. 205; 2 R. C. L. 447, 448; R. C. L. Perm. Supp. p. 472.