# SALTSMAN v. STATE.

No. A-11521. April 16, 1952.

(243 P. 2d 737.)

George L. Hill and Kirksey M. Nix, McAlester and Roy White, Eufaula, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J. The appellant, Gordon Parker Saltsman, who will hereinafter be referred to as defendant, was charged by information filed in the county court of Pittsburg county with driving an automobile while under the influence of intoxicating liquor. The case was tried to a jury, resulting in a verdict of guilty as charged in the information, and the punishment was fixed by the jury at a fine of $50 and costs. Appeal has been duly perfected to this court.

It was charged in the information that on January 17, 1950, the defendant unlawfully drove and operated his automobile upon and along U. S. Highway No.

69, in the 2200 block on North Main in the City of McAlester while under the influence of intoxicating liquor.

For reversal a number of errors are assigned, but a careful reading of the record discloses that the vital question is whether the officers, who did not have a warrant for the arrest of the defendant or for the search of his car, had cause for the arrest of the defendant when they made overt acts to stop him within the city limits of McAlester. In other words, had defendant committed a crime in the presence of the officers at the time they sounded their siren and turned their red light on him? If they had sufficient cause to justify the pursuit and arrest of defendant, then the subsequent search of his car would be justified. Robedeaux v. State, 94 Okla. Cr. 171, 232 P. 2d 642. Two highway patrolman and a highway patrol office employee testified. The defendant did not testify and offered no evidence.

D. W. McDaniel, trooper with the highway patrol, testified that he and trooper Livingston received a radio message to check a vehicle that had left Eufaula, and was headed south on Highway 69. At the time the officers were cruising east of McAlester on Highway 270, and acting on this information they commenced to look for a dark colored vehicle, 1946 Ford, bearing 1949 Oklahoma License 2-51543. Witness stated that as they approached the north city limits of McAlester they met the described vehicle. He further testified:

"The car was coming at a high rate of speed in the city limits, and by the time we turned around, the car was a few blocks south. We fell in behind the vehicle and clocked it at approximately 40 miles in the city limits. By the time we turned on our red lights and siren, it was a block or a block and a half before we could get him stopped."

Witness further testified that as they followed defendant they observed his car weave, but it did not get past the center line. The width of the street or the condition of the pavement was not disclosed by the testimony, but witness did say that when they put the light on defendant's car they observed him place something under the front seat, so immediately when defendant stopped his car Officer Livingston went to the side opposite to the driver and proceeded to search the car, and witness went to the driver's side of the car and directed defendant to get out of the car, which he did. That witness then directed him to come to the rear of the car, and observed that defendant staggered and it was the conclusion of witness that the defendant was drunk and he placed him under arrest. That trooper Livingston found a third of a pint of whiskey under the seat of the car. Trooper Livingston drove defendant's car on to the county jail, and witness had defendant get in the patrol car and drove him to the county jail, where he was incarcerated.

On cross-examination, witness McDaniel testified in part as follows:

"Q. You say the car entered the city limits at an excessive rate of speed? A. Yes. Q. 40 miles an hour? A. Yes. Q. What is the rates of speed fixed on the Highways outside of the city limits,—what was it then? A. Same as it is now, 65 miles an hour. Q. So he wasn't exceeding or violating the speed limits if he was only going 40 miles an hour? A. He was in the city limits when we saw him. Q. When he entered the city limits he came in driving 40 miles an hour? A. Yes. Q. You followed him, you turned around and followed him? A. Yes. Q. After he passed you, you recognized it as the car described to you in the complaint? A. Yes. Q. And you and Bill turned the highway patrol car around and took in after him? A. Yes. Q. And he stopped after going about a block, after you took after him? A. I said we followed him several blocks, and after turning on the red lights we followed him a block or block and a half before he stopped. Q. Still driving at an excessive rate of speed? A. Yes. Q. He entered the city limits at 40 miles an hour, that you followed him and it took him a block to stop?

A. After we turned on the red lights and siren—that we followed him for a block or block and a half before he stopped. Q. He was in the city limits? A. Yes. Q. Driving 40 miles an hour? A. Yes. Q. Where was it approximately between here and old town that you stopped him? A. South of the railroad tracks. Q. You mean the railroad spur? A. Yes. Q. Approximately how far south of the railroad spur? A. Approximately even with the tire shop, I believe they call it Fat's Tire Shop. Q. How far from that spot in your judgment is it to the north city limits where you first saw him? A. I would say six or seven good city blocks. Q. You know where that last filling station is, the one—A. Yes. Q. Where were you in relation to that filling station when you saw Mr. Saltsman come in? A. North of the station. Q. You were outside of the city limits? A. No, sir."

Highway Patrolman W. R. Livingston testified substantially as trooper McDaniel and it was his opinion that the defendant was drunk. He further identified the bottle containing one-third of a pint of whiskey which he testified he found in the defendant's car, and which the court admitted in evidence over the objection of counsel for defendant. On cross-examination witness testified in part:

"Q. When you passed this car driven by Mr. Saltsman, you were looking for it, and you recognized it as being the one described in your complaint? A. Yes. Q. And so you turned your car around? A. Yes. Q. And he was not in sight when you got turned around? A. Yes, he was in sight. Q. How fast was he going? A. 40 miles an hour. Q. You and Mr. McDaniel talked this over? A. Yes, we talked it over. Q. And you both agreed that he was driving 40 miles an hour? A. Yes. Q. When you clocked him he was actually driving 40 miles an hour? A. Yes. Q. You proceeded to follow him, where did you catch up with him? A. We got up with him and caught him just south of there. Q. You had on your red lights, and you turned on your siren, how far in your judgment was it before he stopped after you turned on your red light and that siren? A. Somewhere in the neighborhood of a block."

Fred Emanuel, an office employee of the Highway Patrol, testified that he was riding with the officers and he was in the car in which defendant was taken to jail, and that it was his opinion that defendant was drunk. He further stated that the arrest took place about 1 o'clock in the morning.

Tit. 22 O. S. A. 1951 § 196 provides:

"A peace officer may, without a warrant, arrest a person:

"(1) For a public offense, committed or attempted in his presence.

"(2) When the person arrested has committed a felony, although not in his presence.

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"(4) On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

It has been held that the search of a motor vehicle begins at the time the officers move in to overhaul the driver. Not necessarily when they commence to follow the suspected driver and car, but at the time they perform some overt act in attempting to stop him, such as sounding the siren and turning the spot light on the suspect or forcing him to the curb, or any act having for its purpose the obtaining of authority over the driver.

Of course, to trail or pursue any suspected car to its destination, to observe it and keep it under surveillance, is not in itself an arrest nor a search. Griffin v. State, 90 Okla. Cr. 90, 210 P. 2d 671. See Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879, 1897, dissenting opinion of Justice Jackson.

In the absence of a warrant, the validity of the arrest of the driver of the vehicle and the search thereof is a question to be determined by the court in each case, taking into consideration the circumstances under which the search was made, and the presence or absence of probable cause therefor. See Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433; Bohannon v. State, 66 Okla. Cr. 190, 90 P. 2d 675; Hamner v. State, 44 Okla. Cr. 209, 280 P. 475.

Did the officers here discover any law violation by the defendant at the time they commenced to pursue defendant?

The evidence is that defendant entered the city limits of McAlester driving at a high rate of speed and the officers having identified the car as being the one they were expecting immediately gave chase and within a few blocks overtook defendant and he stopped his car within a block or a block and a half after the spot light was flashed on him, according to one officer, and in less than a block, according to the second trooper's testimony. The officers testified that after taking after defendant they clocked his speed, and that he was making 40 miles per hour at that time. That seems to have been the motivating reason for the sounding of the siren and turning on the red light. Clearly, if by ordinance the speed limit in McAlester along U. S. Highway 69 at the points in question was less than 40 miles per hour, the officers were justified in stopping defendant for speeding and were, as an incident to such arrest, justified in searching his car and would be justified in charging him with any additional law violations that might be discovered. Here the prosecution failed to prove that the city of McAlester had an existing ordinance limiting the speed of motor vehicles along that part of the highway described, to less than 40 miles per hour. While such might be inferred from the testimony of the officers, neither of the officers stated that defendant was violating the speed laws within the city. The burden was on the State to so show.

The evidence is conclusive that the highway patrolmen, when they were notified that a person driving a described car south along U. S. Highway No. 69 was "thought to be intoxicated", responded promptly. They knew, however, that the law violation suggested by the message, if in fact true, constituted a misdemeanor, and that not having a search warrant they could not ipso facto stop the car being driven by the subject and investigate unless they were able to conclude from the personal demeanor and actions of the driver, and the manner that he handled his car as he moved along, such as driver slumping on the wheel, yelling, speeding or reckless manner of operation, that he was in fact intoxicated; or at least discover some law violation in their presence on the part of the driver that would justify them in charging the driver for such law violation as might be committed in their presence. They could not arrest the driver for some misdemeanor committed by him in the presence of their informer prior to the time he came in sight of them. Lyons v. Worley, 152 Okla. 57, 4 P. 2d 3. The arrest cannot be justified by what it turned up. It must have been justified at its commencement.

At the time the officers commenced their pursuit of defendant, there is no testimony that they observed him slumping over the wheel of his car, or driving recklessly. They did testify that after the chase began they observed defendant's car weave from the curb to the center line of the street, and by aid of their spot light observed defendant place something under his front seat. Of course, it is no crime for the driver of a car to place something under the seat of his car; the act itself might have caused his car to swerve or the condition of the paving might have caused this. There is no evidence of the width of the street to give some idea as to the extent of the alleged weaving or how far the weaving continued, whether it was appreciable or negligible. The

evidence is that the car was stopped near the curb within six or seven blocks from the point where defendant passed the officers who had to turn around and follow. There is no evidence that other traffic was moving along the street or that there were parked cars, or any facts that would support a charge of reckless driving irrespective of the speed limit. It may be that the officers observed defendant's car swerving as he approached them and that he continued to swerve until stopped and that the street was free of chug-holes or obstructions that could account for the swerving; and that although he did not swerve over the center line that the street was 75 or 100 feet wide at the points in question, or that the swerving was appreciable and continuous and reckless. But there is no such evidence in the record. The burden of proof was on the state. Evidentiary facts are required to support conclusions. Cases would not have to be sent back for new trial if the prosecuting authorities would prepare their cases, not only with view of obtaining a conviction, but to be sure that the record would support such conviction, in case of appeal. This court must be governed by the record, and not conjecture.

To justify this arrest under the state of the record it must be done by reason of what the officers discovered after they took the defendant into custody, rather than at the time they sought to take him into custody. This cannot be done. Johnson v. United States, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (a misdemeanor case), Lyons v. Worley, supra.

The case is reversed and remanded. If the prosecution can on such trial present evidence to show that the defendant was violating the speed ordinance of McAlester when the officers commenced their efforts to arrest him by starting pursuit, or can present further evidence that the officers at said time noted other facts in addition to speed to indicate that the car was being operated recklessly or to reasonably support the conclusion that the driver was intoxicated, a new trial is ordered, and this reversal will not have benefited the defendant, but if no such evidence can be produced, the rights of defendant will have been preserved, the case to be dismissed.

BRETT, P. J., and JONES, J., concur.