## AMOS v. STATE.

No. A-11789. Sept. 16, 1953.

(261 P. 2d 626.)

Irvine E. Ungerman, Tulsa, (Charles A. Whitebook, Tulsa, of counsel), for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, First Asst. Atty. Gen., for defendant in error.

BRETT, J. Plaintiff in error, Robert Clarence Amos, defendant below, was charged by information in the court of common pleas, Tulsa county, with the offense of unlawful transportation of a quantity of intoxicating liquor in said county on November 24, 1951. He was tried by the court without a jury, found guilty, sentenced to 30 days in jail and a fine of $100. Judgment and sentence was entered accordingly from which this appeal has been perfected.

During the proceedings a motion to suppress the evidence was filed, heard, and overruled on the ground of an unlawful search and seizure, and the evidence heard thereon by stipulation was considered as the evidence in the case on the merits. Defendant complains of the court's failure to sustain the motion to suppress the evidence. The pertinent evidence on which the motion is predicated is as follows: On November 24, 1951, at about 5 a.m. before daybreak the defendant was driving south on North Cincinnati street approaching 56th street which runs westward into Osage county. Highway Patrolmen Gregg and Ryle said they were pulling up to the intersection on 56th street going east. The defendant turned right on the 56th street graveled road going west driving so fast that he almost hit the patrol car. But the officers did not attempt to justify the arrest on the theory that defendant was guilty of reckless driving. In this connection the defendant testified he was driving 20 miles an hour when he passed the patrolmen on 56th street, and that he was on the right side of the highway all the time. The record shows further that immediately the officers turned around and gave pursuit. The defendant observed the officers in pursuit and seeing their red light and hearing their siren about three quarters of a mile beyond the intersection stopped his automobile, got out and went to the back end where he met the officers. The officers denied they turned on their red light or sounded their siren. The officers justified the pursuit and the arrest on the belief that he might "have had too much to drink, or, something, and we didn't know". The record conclusively shows from the patrolmen's sworn testimony their suspicions were not well founded. It appears the testimony of the patrolmen was that Amos was neither drunk nor drinking. They testified in response to why he drove that way that Amos said he saw the white sides of the patrol car. It is

apparent that the ground upon which Amos was stopped and arrested was rank suspicion that he may have been drunk. It further appears that while Officer Gregg was engaged in conversation with the defendant about his driver's license, Officer Ryle took his flashlight, went and looked into the defendant's automobile. Officer Ryle testified that with the aid of the flashlight he discovered a part of a bottle sticking out of a paper sack on the floorboard on the right-hand side of the defendant's automobile. He said it was in a brown sack. It is pertinent to note that at no time in his testimony did he identify this purported bottle as a whiskey bottle either by label or contents—but just a bottle. The defendant denied there were any broken lots or individual bottles but testified they were all in cases. The record shows that after Patrolman Ryle discovered the bottle in the sack he returned to Officer Gregg. He then testified that he returned to the Amos car, pulled a blanket off the back seat and exposed the liquor, all in cartons. Ryle then testified, "after we found that we asked him how much he had. He said approximately 15 cases". The defendant testified that the first thing the patrolmen asked him was how much he had before they ever attempted to search his automobile. He related he told them he didn't have anything. He testfied that while Gregg conversed with him, Ryle pulled the blanket off the whiskey in the back seat of his automobile. Up to that time he stated he had not been placed under arrest for any offense, nor had he given permission for the search and seizure of the whiskey and at no time was he ever served with a search warrant.

It is our opinion that under the foregoing facts the trial court erred in not sustaining the defendant's motion to suppress the evidence. According to the officers' testimony they pursued the defendant on the suspicion that he may have been drunk. As hereinbefore indicated the record proves this suspicion to be without foundation. Moreover, the bottle in the sack observed by Patrolman Ryle does not support the proposition of an offense committed in the presence of an officer justifying the search, for nowhere in the record does it appear he identified the bottle as containing whiskey. All his testimony supports is that it was a part of a bottle sticking out of a sack. In regard to Ryle's testimony, we are confronted with a mere suspicion, in relation to the bottle, unsupported by any facts except an undescribed bottle either as to the contents, brand, or stamps. We cannot assume that it was a whiskey bottle bearing a label as such containing whiskey and carrying U. S. Government revenue stamps. Patrolman Gregg identified the bottle as a "fifth, of what, he didn't recall". It has been held that seeing a bottle without knowledge that the bottle contained whiskey or intoxicating liquor is not sufficient to sustain the arrest on the theory of an offense committed in the officer's presence. Where the officer could not observe and become cognizant of the defendant's committing the offense by the use of his senses, it could not be committed in his presence so as to allow an arrest without a warrant. Black v. State, 63 Okla. Cr. 317, 74 P. 2d 1172; Washington v. State, 60 Okla. Cr. 316, 64 P. 2d 926. Washington was not a known bootlegger as in the case at bar. Amos was not a known bootlegger. The patrolmen said they never saw him before. Lawson v. State, 84 Okla. Cr. 396, 182 P. 2d 786, wherein it was held:

"Where an officer could not observe and become cognizant of the act constituting the offense by the use of his senses, it could not be committed in his presence so as to authorize the search and the arrest of the defendant without a warrant."

Keith v. State, 30 Okla. Cr. 168, 235 P. 631; Bassett v. State, 34 Okla. Cr. 370, 246 P. 654, wherein the oficers saw the neck of a bottle sticking from the defendant's pocket. Fines v. State, 34 Okla. 153, 245 P. 66, wherein the officers saw only the prints of bottles in Fines' coat. In light of the testimony herein and the authorities, if the patrolmen did see the bottle, that alone, without being

214

able to further identify it as to its contents, label or stamp, would amount only to a mere suspicion, insufficient to support the search of the defendant in the case at bar on the theory that the offense was being committed in the officers' presence. A recent case in point, the facts very similar with the situation herein involved, is Johnson v. State, 92 Okla. Cr. 63, 220 P. 2d 469, wherein this court said:

"A search of an automobile without a search warrant and not as an incident of a lawful arrest, and not on any probable cause of the commission of a felony, but on mere suspicion violates the constitutional provision forbidding unreasonable searches or seizures, and evidence obtained by such a search is inadmissible.

"Where an officer, after lawfully stopping or restraining a person, becomes aware that an offense is being committed or is about to be committed in the officer's presence, he may lawfully arrest the offender without a warrant, but where the officer becomes aware of the facts constituting the offense after making an unlawful arrest, the arrest cannot be justified as being for an offense committed in the officer's 'presence'.

"The search of motorist's automobile without warrant of arrest, or search warrant or knowledge that automobile contained intoxicating liquor, after motorist was unlawfully arrested, was an 'unreasonable search' within meaning of the Constitution giving the right to be secure against 'unreasonable searches,' and evidence obtained from the motorist should have been excluded in prosecution for the unlawful possession of intoxicating liquor."

See, also, Tucker v. State, 62 Okla. Cr. 406, 71 P. 2d 1092; Bowdry v. State, 64 Okla. Cr. 86, 77 P. 2d 753; Hoppes v. State, 79 Okla. Cr. 179, 105 P. 2d 433, 434, wherein laying down the principles as announced in Johnson v. State, supra, in addition thereto, in syllabus 4 said:

"A search of an automobile without a search warrant and not as an incident of a lawful arrest, and not upon any probable cause of the commission of a felony, but upon a mere suspicion, is in violation of Bill of Rights, Sec. 30, and evidence obtained by such a search is inadmissible. Const. Art. 2, Sec. 30, Okla. St. Ann."

See, also, Jones v. State, 82 Okla. Cr. 91, 166 P. 2d 443; Humphries v. State, 94 Okla. Cr. 319, 235 P. 2d 975; Saltsman v. State, 95 Okla. Cr. 228, 243 P. 2d 737. In the latter case it was held that the search begins at the time the officers commit some overt act in attempting to stop the accused, such as sounding the siren, turning on the spotlight, or some act having for its purpose the obtaining of authority over the driver. Herein the search began when Amos was stopped on the suspicion of drunkenness, clearly an unfounded suspicion in light of the officers' own testimony. Hence, Amos was under an unlawful arrest. In the case at bar, the facts neither support the arrest or the subsequent search predicated upon the supposed bottle in the paper sack. The search being conducted without a warrant was unlawful from the beginning and is not made lawful by the subsequent discovery of the liquor contained in the cases. This court and other courts have held that the search must be justified by the steps that precede it. Edwards v. State, 83 Okla. Cr. 340, 177 P. 2d 143. Therein it was further said, "These steps must be lawful in their entirety". Here the arrest was unlawful being predicated upon pure suspicion admittedly without foundation. The purported discovery of a bottle in a brown sack is likewise rank suspicion being unsupported by even the slightest evidence as to its contents. It thus appears that the arrest in this case is one of subterfuge designed to support the subsequent search and seizure which of necessity falls because of its own inherent weaknesses both from the standpoint of facts as well as in light of the law applicable thereto. For all the above and foregoing reasons, the judgment and sentence herein imposed is accordingly reversed, with directions to dismiss the action.

POWELL, P. J., and JONES, J., concur.