Vearel C. PUCKETT, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12937.

Court of Criminal Appeals of Oklahoma.

July 19, 1961.

As Corrected July 26, 1961.

954

C. Everett Murphy, Kingfisher, Paul R. Haunstein, Enid, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Vearel C. Puckett, hereinafter referred to as the defendant, was charged by information in the county court of Garfield County with the crime of operating a motor vehicle while under the influence of intoxicating liquor. Defendant was tried before a jury who returned a verdict of guilty and left the punishment to be assessed by the trial judge who sentenced defendant to serve 30 days in the county jail and to pay a fine in the amount of $200 and costs of the action.

The charge upon which defendant was convicted arose from the following facts as related in the transcript of the testimony.

Mrs. Ruth Piersoll, her sister and two girls were driving on U.S. Highway 81 on their way to El Reno. Just south of Waukomis, Oklahoma, about 5 p. m. Mrs. Piersoll stated that she observed a blue pickup truck going down the road, driving from one side to the other. That she got the tag number and stopped at the first opportunity and phoned the highway patrol. Her testimony in that regard was as follows:

"A. We followed it for about a mile and it was going from one side of the road to the other so I was real excited by the time we had followed it about a mile and I dropped into Marks to call, when I talked to the Highway Patrolman they wanted to stop and get my name and asked me a gillion questions and I said 'Get on out there and get that man before he gets hurt or kills himself or someone else.' "

Defense objected to these remarks as hearsay but was overruled by trial judge. This witness further testified that she saw the pickup truck again about 1½ miles down the road from Marks or about 2½ miles south of Waukomis, parked off the highway with a man slumped over the wheel. Witness Piersoll testified during the time she followed the pickup she could not identify the driver except she could tell it was a man driving, and could not identify the driver at time of trial.

The state produced witness Robert C. Lovell, a resident of Hennessey who testified he was driving on U.S. Highway 81 approximately two miles south of Waukomis and noticed a pickup truck acting in a strange manner. His testimony in that regard is recited in the casemade as follows:

"A. Well, I first noticed the truck just about a half miles there which would be exactly two miles south of Waukomis and at that time it run off the road on the right hand side, the right two wheels. I slowed up, I was

about ready to pass, and the truck was only doing about 30 miles an hour. I slowed up as there was traffic coming from the south. The truck was going south and he crossed over the center line into the other lane and his left two wheels of the pick up went off the left side. Then the pickup proceeded back into its lane of traffic. A car started to pass me and I motioned him down and he pulled in in front of me and followed the pickup. The pickup then run off the right side of the road again and then crossed over and run off the left hand side of the road again. This was all in a half mile space. At the intersection, the pickup started to make a right hand turn off the highway on to the country road and he went maybe ten or fifteen feet south of the intersection and the front end of the pickup went into the ditch, then backed across the road and just missed a car coming from the south going north and then the pickup proceeded down the road about 50 yards and the front end of the pickup went into the ditch. I then had my wife write down the license number of the pickup and proceeded on to Hennessey and called the Highway Patrol."

"Q. Was this in the afternoon, morning or what? A. It was along in the evening, I don't remember exactly but I believe it was about an hour and a half before dark."

The witness further testified:

"Q. You had a chance to observe this pickup truck for some distance, did you not? A. A half mile.

"Q. Could you tell whether a man or a woman was driving? A. The only thing I can tell is that it was a man, it is hard to see through the back of a pickup.

"Q. Can you recall approximately where the pickup truck went off the highway with reference to Waukomis, how far south? A. At the S curve, two and a half miles south of

Waukomis. The first time the pickup veered off the pavement was one half mile north of there. The last time I saw the pickup it was in the ditch about 50 yards west of Highway 81 on the county road two and one half miles south of Waukomis."

The state's witness Marlene Dierksen testified among other things to the following:

"A. Marlene Dierksen.

"Q. What was your maiden name? A. Skoda—S k o d a.

"Q. Your parents or some of your relation live south of Enid on a farm, do they? A. Yes.

"Q. Where is that? A. It is right on the corner two and one half miles south of Waukomis, a buff brick house.

"Q. Did you have an occasion in the early part of last October to go visit your parents? A. Mother and I were coming home from Enid that afternoon.

"Q. Did you observe any motor vehicle on that road there by your parents farm? A. Yes, as we drove up in front we saw this pickup on the side of the road and the man was slumped over and I said 'Mother, we—'

"Mr. Haunstein: Objected to as hearsay.

"The Court: That isn't hearsay, she can say what she said—what somebody else said is hearsay, go ahead.

"A. He was slumped over and I said 'Mother, he might be dead'. We went on to the house and changed our clothes and took the groceries into the house and it took us about 20 to 30 minutes. I said we had better go check and we drove by and went to my Aunt's house on the other side of the railroad tracks. We had been there a few minutes and I said maybe we can help him out, so I called the Highway Patrol and I said there is a man out here apparently dead or awfully sick and he said, 'Yes, he is dead, dead drunk'.

"Mr. Haunstein: We object to that as hearsay.

"The Court: Sustained—the objection is sustained and the Jury is instructed specifically not to take that into consideration.

"By Mr. Gregory:

"Q. How far south of Waukomis is this road you are talking about? A. Two and one half miles south exactly.

"Mr. Gregory: No further questions."

H. F. Summers, state trooper with the Department of Public Safety, testified that on the 10th day of October, he received a call from the patrol stating that a drunk driver was travelling south out of Waukomis. Trooper Summers testified he proceeded some 28 miles to a spot about 2½ miles south of Waukomis where he found a late model blue Chevrolet parked near a bar ditch about 50 or 60 feet west of U.S. 81. He testified in that regard as follows:

"Q. Tell the Jury what you found? A. I found this late model blue Chevrolet pick-up parked partly in the bar ditch and on the road and Mr. Puckett slumped over the steering wheel. I parked the patrol car behind him, got out, and Mr. Schultz, the Deputy Sheriff, at that time had arrived also and Mr. Schultz aroused Mr. Pickett and got him out of his pickup and put him in the patrol car and I brought him back to Enid.

"Q. Did you have any conversation at all with Mr. Puckett? A. I did. I questioned him at length coming back to Enid.

"Q. What did he tell you, if anything? A. I asked Mr. Puckett where he had been and he said he had been in Enid and named two or three different bars he has visited and drank beer in. He stated that enroute from Enid to Drummond he had stopped in Waukomis at the 81 Lounge and had a beer. When he left Waukomis enroute to Drummond he had missed the

Drummond road about two miles, and he stated enroute he had got so intoxicated he had missed the blacktop road.

"Q. Did he tell you he was intoxicated? A. Yes, he stated he was intoxicated.

"Q. Did he say he had been taking any drugs or anything? A. No sir.

"Q. At no time did he state he had been taking any drugs? A. No sir."

It is to be noted that defense made objection to the testimony of Trooper Summers for the reason defendant was not advised of his constitutional rights prior to his admission of driving the vehicle while intoxicated. The objection was overruled and exceptions saved. Defense further objected and asked that the trooper's testimony be stricken for the reason that the defendant was arrested without a warrant and that no crime was committed in the officer's presence, which was overruled and exception taken.

Defendant's testimony in substance denies driving while intoxicated. He admits being in the place and at the approximate time where his accusers charge, but contends he had drunk only two or three beers. He contends he had been injured by virtue of an accident prior to the date in question wherein his leg had been broken. His defense is substantially stated in his own testimony as follows:

"A. I was on my way home and I drank two or three beers, I had been taking these pain pills and I taken some of those to keep down the pain of my broken leg. I was coughing or choking and I seen I was swerving around there and I pulled off the highway.

"Q. You say you were taking medicine? A. Yes, sir.

"Q. Were you under the care of a Doctor? A. Yes sir.

"Q. And who was your Doctor? A. Dr. Buswell at Hennessey.

"Q. Did you afterwards go to any other Doctor? A. Not until after the insurance company wouldn't settle with

me like I thought and I went to you and Dr. Pendleton at Kingfisher.

"Q. Were x-rays taken of your leg? A. Yes, sir.

"Q. On October 30th, was, or was not your right leg swelled? A. Yes, sir.

"Q. Was there any difference between the right and left? A. The right was an inch and a half bigger.

"Q. When you pulled off of the highway, how long did you stay there before something happened? A. I would say possibly thirty minutes.

"Q. And then just what do you remember happened? A. The Highway Patrolman took me out and wanted me to walk a line and I got off the line, and he said 'come on, let's go to town'.

"Q. Did you tell him that you had an injured leg? A. Yes sir.

"Q. Did you tell him that you were ill? A. Yes sir, I told him I was sick.

"Q. Did the Highway Patrolman tell you that you were under arrest? A. No sir.

"Q. Did he advise you that anything that you might say could be held against you? A. No sir.

"Q. Did you admit to him that you were drunk? A. No sir, I admitted to him that I had drank three bottles of beer.

"Q. When did you drink those beers? A. That afternoon.

"Q. Was it 3.2?"

This in substance constituted the basis of the law suit and brought about the charges upon which defendant was convicted. He now appeals to this Court relying for reversal upon numerous assignments of error numerically set forth as follows:

"(a) That the Court erred in overruling the motion to suppress the evidence.

"(b) That the Court erred in admitting incompetent evidence, over the objection of the Defendant, by the arresting officer for a misdemeanor not committed in the presence of the officer and based solely upon hearsay.

"(c) That the court prevented counsel from properly representing said Defendant in that he failed to permit Defendant to object to the testimony of Officer Summers, and stated 'That he was going to permit Officer Summers to testify and that after he had testified he would then allow and permit counsel to object to every word, syllable and paragraph in said testimony.'

"(d) That the constitutional rights of said Defendant were violated and that he was denied due process of law by the interrogating said Defendant without first advising him of his constitutional rights.

"(e) That the Court erred in overruling Defendant's demurrer to the State's evidence.

"(f) That the Court erred in overruling Defendant's motion for an instructed verdict.

"(g) That the Court erred in overruling Defendant's motion for a new trial."

All of defendant's assignments need not be herein discussed as it is readily observed the most paramount contention involves the Court's refusal to suppress the evidence obtained in what defendant asserts to be an illegal arrest.

The question of whether defendant drove his automobile while under the influence of intoxicating liquor was under proper instruction, submitted to the jury. We have uniformly held that where evidence in conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh same and determine the facts. Ryan v. State, 97 Okl.Cr. 119, 258 P.2d 1208. The testimony places a blue pickup on Highway U.S. 81 approximately 2½ miles south of Waukomis at about 5:00 p. m. being driven in an erratic weaving manner. The vehicle left the

highway and went into a bar ditch near Skoda's residence where the driver slumped over the wheel as if dead or asleep. All of this defendant admits. The conflict arose over whether defendant was incapacitated as a result of intoxication or illness. This was a question for the jury. Trooper Summers found defendant slumped over the wheel at the location established by all witnesses. He found defendant as a result of information related to him over the radio from patrol headquarters. He did not see defendant drive the vehicle but testified unequivocally that defendant was drunk at the scene when found and took him into custody, therefrom to jail. Two days later the county attorney charged defendant with driving a motor vehicle while under the influence of intoxicating liquor.

The paramount question determinative of reversible error is whether or not the court erred in overruling the motion to suppress the evidence of Trooper Summers, and whether or not the court erred in overruling the motion to quash.

From our review of the testimony in its entirety we are compelled to conclude that the court did not err in overruling defendant's motion to suppress. The question is not of first impression and has been passed upon numerous times by this Court. We agree with defendant's argument that the officer did not witness the defendant driving while intoxicated and that he was without authority to arrest defendant without a warrant for a misdemeanor not committed in his presence. See Graham v. State, 31 Okl.Cr. 125, 237 P. 462; Keith v. State, 30 Okl.Cr. 168, 235 P. 631; Lyons v. Worley, 152 Okl. 57, 4 P.2d 3. However, the case falls within the rule adopted in the case of Farnsworth v. State, Okl.Cr., 343 P.2d 744, 747:

"Where police officers did not see accident but arrived at scene some minutes after accident, officers had no right to arrest defendant without a warrant for misdemeanor offense of drunken driving since such offense was not committed in their presence; However, officers had right to arrest defendant for any other offense committed in their presence, such as drunkenness in a public place, and when that was the case the officers were properly permitted to testify in drunken driving prosecution that defendant did not talk plain and staggered to police automobile and had odor of alcohol about his person and that manual tests for intoxication given to defendant at police station indicated that defendant was under influence of intoxicating liquor."

In the instant case it is not clear as to what the officers advised the defendant as to the cause for his arrest. However, as was stated in the Farnsworth case, supra, no charge of public drunkenness, an offense shown to have been committed in the presence of the officers, was filed, but instead, they filed a charge of driving an auto while under the influence of intoxicating liquor, an offense shown not to have been committed in the officer's presence.

This Court said in the case of Hoskins v. State, Okl.Cr. 286 P.2d 293, 295:

"The patrolman had for consideration whether or not he would arrest the defendant without a warrant for a misdemeanor committed in his presence, to wit: Drunkenness in a public place, Tit. 37 O.S.1951 § 8, or some other charge. He took defendant into custody. The record discloses that the present charge was approved by an assistant county attorney the next day, and a warrant issued.

"At this point it should be made clear that officer Baker had no authority to arrest the defendant at the scene of the car accident on the night in question for a past misdemeanor not committed in his presence, Lyons v. Worley, 152 Okl. 57, 4 P.2d 3, and cases cited; Graham v. State, 31 Okl.Cr. 125, 237 P. 462; Tit. O.S.1951 § 196, even though an arrest might have been made for drunkenness in a public place. But the

fact that officer Baker apparently arrested the defendant on the charge of drunk driving rather than merely drunkenness does not brand as inadmissible the evidence obtained at the scene of the accident, for the simple reason that it was within the province of the duties of both the Edmond policemen and the State Highway patrolmen to investigate motor vehicle accidents in public places. Having a right to be where they were, any evidence discovered was admissible. Finley v. State, 91 Okl.Cr. 137, 217 P.2d 189.

"It should be kept in mind that the county attorney decides what cases to file or not to file. In Wilson v. State, 89 Okl.Cr. 421, 209 P.2d 512, 514, 212 P.2d 144, we said: 'The county attorney acts under a discretion committed to him for public good, and one of his most important functions is to select, out of what the law permits, the charges which he will bring against [the] offenders.' "

Farnsworth v. State, Okl.Cr., 343 P.2d 744, 750 further states:

"It will be noted that no evidence was offered in the within case that was obtained by reason of an illegal search, if the arrest was actually made for driving a motor vehicle while under the influence of intoxicating liquor. Such evidence would have been subject to suppression on timely objection, whether a motion to suppress had ever been filed or not. See Shirey v. State, Okl.Cr. 321 P.2d 981, 982, citing Kelso v. State, 97 Okl.Cr. 215, 260 P.2d 864, and White v. State, 81 Okl.Cr. 399, 165 P.2d 151 * * * paragraph 4 of the syllabus said:

" 'Objection to evidence obtained by unlawful arrest was timely when interposed during course of examination, when it became apparent what the state intended to rely upon.'

"We hold that under the facts in this case, the testimony of the officers with reference to the condition of the defendant as to intoxication at the scene of the accident minutes after it happened was properly received, and that the court did not err in overruling the motion to suppress or the motion to quash the information."

In the instant case there can be little question but what the trooper had a right to be where he was. Certainly it would be within the province of an officer and probably his profound duty to investigate a motor vehicle in a bar ditch or on the shoulder of the highway wherein there was a driver slumped over the steering wheel. For instance immediate hospitalization may forestay the fatality of a heart attack. For a trooper to pass up such a vehicle because he had no right to investigate would be a brutal and impractical interpretation of the law. Regardless of prior information whether by radio or otherwise would not preclude such an investigation. Evidence in such an instance obtained by observation would no doubt be admissible. The investigation revealed defendant was, in the opinion of the trooper, intoxicated. The officer took defendant into custody which he had a right to do for public drunk even though the county attorney chose to file drunk driving. This Court chooses herein to reaffirm the ruling in the Farnsworth case. We therefore hold that the court did not err in overruling defendant's various attempts to suppress the evidence.

It appears that defendant's extrajudicial statements, made at the time he was taken into custody corroborated the testimony of the state witnesses. Defense counsel argues that these statements were incompetent and violated defendant's constitutional rights to be advised that what he said would or could be used against him.

The trooper readily admits that he did not advise defendant that the statement would or could be used against him. The evidence makes it clear that defendant's extrajudicial statements were voluntarily made, without promise, threat, in-

ducement or fear. This Court said in the case of Rowan v. State, 57 Okl.Cr. 345, 361, 49 P.2d 791, 792:

"Extra judicial confessions are those which are made by the defendant out of court, whether to an official or non official person. It is elementary law that such confessions, in order to be admissible, must be entirely free and voluntary. The rule is well established that confessions induced by a promise of benefit or a threat of harm, made to the defendant by a prosecuting attorney or an officer having him in custody, or by anyone having authority over him, or made by a private person in the presence of one whose acquiescence may be presumed, will be deemed involuntary, and will be inadmissible as evidence."

However, in the instant case there is no contention that defendant's statements were involuntary, only that they were made without defendant being advised that they would or could be used against him. Therefore the question determinative of the issue is whether failure to advise defendant, standing alone, renders inadmissible his voluntary extra judicial statements. We do not think so. The real question is whether there had been any threat or promise of such a nature that the prisoner would be likely to tell an untruth from fear of threat or hope of profit from the promise. Confession or statement procured or induced by a promise of benefit or threat of harm, made by defendant to an officer having him in custody, or by one having authority over him will be deemed involuntary and inadmissible. See Williams v. State, 65 Okl.Cr. 336, 342, 86 P.2d 1015. Even though the principle involved has been made clear by numerous decisions of this Court, it does not mean that a defendant may not make a voluntary statement even to an officer who had him in charge. Though it is certainly the best practice that he be warned that any statement which he makes may be used against him, and there should not be an inducement held out to him that he will benefit by such statements. One of

the leading cases will be found in the case of Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568, pars. 1, 2 of the syllabus which is quoted with approval in the case of Coleman v. State, 70 Okl.Cr. 246, 255, 104 P.2d 1004, 1005, 105 P.2d 431:

"The mere fact that a confession is made to a police officer while the accused is under arrest in or out of prison, or is drawn out by question, does not necessarily render the confession involuntary; but as one of the circumstances such imprisonment or interrogation may be taken into account in determining whether or not the statements made by the prisoner are voluntary."

It appears to this Court that the statements were freely and voluntarily given and made in absence of any duress, pronounced inducement or threats capable of producing fear or profit, therefore they were admissible.

Defendant next contends that the court erred in permitting witness Ruth Piersoll to testify to hearsay testimony, wherein she told the police on the telephone "Get out there and get that man before he gets hurt or kills himself or someone else." Attorney for defendant objected to the statement as being hearsay. The court overruled the objection by stating "she can state what she said". Defense excepted. Also defense argues that the trial court committed error in permitting witness Dierksen to testify as follows:

"Did you observe any motor vehicle on that road there by your parents farm?

"A. Yes, as we drove up on front we saw this pickup on the side of the road and a man was slumped over and I said, 'Mother, we—'

"Mr. Haunstein: We object to this hearsay.

"The Court: That isn't hearsay, she can say what she said, what somebody else said is hearsay, go ahead, answer.

"A. He was slumped over and I said Mother, he might be dead. We went on to the house and changed our clothes and took the groceries in the house and it took us about 20 or 30 minutes, and I said that we had better go and check and we drove by and went to my Aunt's house on the other side of the railroad tracks. We had been there a few minutes and I said maybe we can help him out, so I called the Highway Patrol and I said, there is a man out there, apparently dead or awful sick and he said, Yes, he is dead drunk.

"Mr. Haunstein: We object to that as hearsay."

The Court sustained the objections and the jury was instructed specifically not to take that into consideration.

The testimony complained of no doubt constituted hearsay testimony. The attorney general so admits in his brief in the following language as he refers to said contention:

"We will agree with counsel that the county judge had an erroneous idea as to the admissibility of certain testimony."

He further argues that it was of no consequence.

■■■■ These were voluntary statements made by the witnesses as they were relating in narrative form the incident as they saw it. In the first instance the court overruled the objection; in the second he sustained the objection. There was sufficient evidence, without these statements upon which the jury could support their verdict. They were not determinative of guilt or innocence but could have a bearing upon the amount of punishment rendered by a jury or in the instant case could have played a part in the jury being unable to arrive at the punishment to be rendered. They were no doubt capable of being prejudiced and would have been better unsaid. Though we prefer to give the defendant the benefit of the doubt in order to preserve all rights to a fair and impartial trial, care must be exercised as not to penalize the state for impromptu voluntary statements over which the county attorney may have no control. Defendant could have more properly preserved his record for appeal on this particular issue. This Court said in the case of Walker v. State, 97 Okl.Cr. 367, 265 P.2d 499:

"To properly preserve for presentation on appeal the alleged error in the reception of hearsay evidence, the accused should have objected to such evidence at the time it was introduced and moved to exclude the same from consideration of the jury."

However, in the instant case the judge had before him sufficient objection to compose an alert as to the possibility of error, though it is better practice to save exceptions and request the court to admonish the jury not to consider the same.

■■■■ Defendant's final argument arises from remarks made by the trial court which the defendant contends were biased and prejudicial and lended its bit toward keeping defendant from having the benefit of a fair and impartial trial. The remarks pinpointed by defense counsel involves the court's statement in overruling one of numerous objections while Trooper Summers was testifying.

Defense counsel recites the following:

"Mr. Murphy: We still object to all of this testimony.

"The Court: Overruled, I want this witness to testify. Objection will be taken on every word he says and exception allowed all the way through. *The Court does not want to be interrupted again,* let the witness testify." (Emphasis ours.)

In this connection it is well to state that the trial judge should preside over the trial with judicial conduct, pass upon questions of law, keep decorum and rule upon the admissibility of the evidence. Because of his position he must be ultra-cautious in refraining from any statements upon which the wrong interpretation must be placed or from which an inference might be drawn

that would prejudice the defendant. Lawyers in most instances represent their client with vigor and thereby feel compelled to object frequently to preserve their record. For this enthusiasm they should not be admonished in the presence of the jury unless their actions interfere with the decorum of the court or the orderly administration of justice. An attorney should present an objection in every instance where he has doubt as to its legality. This is not only safe procedure but is a profound duty to his client. It is difficult for this Court to determine the effect of such remarks. The expression of the trial judge or the tone of his voice is not known by this Court. He no doubt intended for the defense counsel to have an objection to the entire testimony with exceptions allowed and he so stated. The remarks would have been better not said in the language depicted but do not appear to have been of such a nature as to constitute reversible error. The utterances did not in any way bear upon the guilt or innocence of defendant.

A review of the entire record presents several irregularities bordering upon reversible error but none of such consequence as to justify this Court in saying that defendant did not receive a fair and impartial trial. This Court is of the opinion that a retrial of the case would produce the same result in absence of the irregularity complained of. Therefore, the Court is of the opinion that the judgment and sentence should be affirmed but because of the improper introduction of testimony and other irregularities, the sentence imposed is hereby modified to 15 days in the county jail and a fine of $100.

BRETT and BUSSEY, JJ., concur.