Barney Leon SHIREY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12507.

Criminal Court of Appeals of Oklahoma.

Oct. 30, 1957.

Rehearing Denied Feb. 26, 1958.

Cund, Garvin & Baucum, Duncan, by M. M. Baucum, Duncan, for plaintiff in error.

Mac. Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Barney Leon Shirey, hereinafter referred to as the defendant, was convicted in the District Court of Stephens County of the crime of operating a motor vehicle while under the influence of intoxicating liquor, second and subsequent offense. The jury found the defendant guilty, but were unable to agree upon the punishment and left the punishment up to the trial judge who sentenced the defendant to a term of two years in the state penitentiary at McAlester, Okla-homa, and from said judgment and sentence the defendant appeals.

For reversal of said cause the defendant asserts three assignments of error as follows:

> 1. Error of the court in admitting evidence obtained as a result of an unlawful arrest.

> 2. Error of the court in refusing to grant defendant's requested instruction No. 5.

> 3. Error of court in giving its instruction No. 5.

The questions raised by the defendant contain much merit and are worthy of the utmost consideration by this court. The attorney for the defendant is to be commended upon an excellent brief filed in this cause in support of his contentions. It reflects extensive research which has been of much help to the court in deciding these questions of law. The duties of this court would be considerably lightened if all attorneys would exert the effort to cite the court to numerous cases in support of their contentions when available.

The case at bar arose from the following set of facts reflected by the transcript:

The defendant was driving his car on U. S. Highway 81 in Stephens County. L. L. Kilgore, Sheriff of Tillman County, was at the same time returning from McAlester where he had taken two prisoners. He stated he observed the defendant driving in a manner which led the sheriff to believe the defendant was intoxicated. He radioed the sheriff's office at Duncan and gave them the description of the car, location, tag number, color, and model and asked them to send a highway patrolman out. The sheriff testified that some few minutes later a highway patrol car pulled up beside him. That he motioned to defendant's car and the highway patrolman pulled on around his car and another, between him and the defendant's car, and pulled in front of defendant's car and stopped him. His exact testimony is as follows:

> "Q. Now, you say as the Highway Patrol car approached you another car

passed you and got between you and this car being driven by the defendant, is that correct? A. About the time the Highway Patrol pulled in over there on the west drive-way.

"Q. On the west drive-way? Now, did you see the Highway Patrol car as it was approaching you? A. No, I didn't see it. I didn't even know which way it came from until it pulled up—until they passed me.

"Q. They passed, you going south? A. Right.

"Q. That's the patrol car? A. Yes.

"Q. Now, do you know how far back south they went? A. No, I just told you, I didn't know which way they come from, whether they come from the south or the north.

"Q. Did you give them a signal? That's who you was looking for, did you give them a signal? A. When they pulled up by the side of me, I did, yes.

"Q. Well, when they was going south, did you signal them? A. That's when they passed me.

"Q. All right, that's what I asked you, Mr. Gilmore, when they passed you gave them a signal and then what did they do? A. They pulled on up in front of the car and stopped it, turned the siren on.

"Q. Just a moment. They pulled up in front of the car? How long afterwards before they stopped the car? A. Just as soon as they pulled up there, it couldn't have been but a few seconds.

\* \* \* \* \* \*

"Q. In other words, that put the Patrol car behind you and you were behind this other car and the defendant's car, is that correct? A. Well, I was behind the car that got between me and the defendant, sure. They pulled up by the side of me going the same direction, in the same line of traffic.

"Q. You say you never saw the Patrol car going north? A. No.

"Q. When they pulled up by the side of you, what kind of a signal did they give you? A. They didn't give me any signal at all when the car pulled up, naturally, this Highway Patrol car, I just motioned to the car and they went on.

"Q. You motioned the car that you wanted them to stop, is that correct? A. Yeah, that's right.

"Q. And they stopped it? A. Yes."

It is conceded by the testimony that the sheriff played no part in the actual arrest. He testified:

"A. The Highway Patrol came out and I think a Deputy Sheriff was with this Highway Patrol.

"Q. What did they do? A. They stopped the car and got the man out.

"Q. Where were you when they did that? A. I pulled up behind the defendant's car and got out and walked over to the car where they had him out talking to him."

Patrolman Landis testified:

"Q. The sheriff didn't make the arrest or assist in making the arrest, is that correct? A. The Deputy Sheriff, Mr. Sowell.

"Q. That's the man that was with you, though? A. That's correct.

"Q. And, after this Sheriff came up, then what did he do? A. The Sheriff from Tillman County?

"Q. Yes? A. I asked him, I says, 'This is the car that you had reference to, this is the car you followed?'

"Q. There was still a doubt in your mind? A. I wanted to make sure.

"Q. Yes, sir?"

Patrolman Landis testified he received the information conveyed by Sheriff Kilgore by radio to the sheriff's office in Duncan and in pursuance thereof, and with a deputy sheriff, proceeded north on Highway

81 and just as he passed Elk Street, "We saw the car approaching." His testimony was as follows:

"Q. What kind of a car was that? A. It was a black '51 Ford sedan.

"Q. And, what did you notice about the car? A. Well, he had already gave us the type and color of car and we were kind of noticing for that particular make of car and I noticed and when I met it, noticed it, it was in the inside lane of traffic.

"Q. Is that traffic lane there posted to keep right? A. Except when passing, yes, sir.

"Q. And he was not keeping to the right, is that right? A. When I first observed him, he was in the inside lane.

"Q. Was he passing any cars at that time? A. No, sir, not that I remember. I believe he was just driving inside.

"Q. All right, what did you do? A. We had to go up to the next cross-over, which is up to where that base-ball pitching machine is, and turn around and then we come up behind him and got him stopped just north of Pierce Propane just up at the north edge of town.

"Q. Did you observe the automobile from the time that you saw it there near Elk Street until you stopped it down at the Pierce Propane? A. We got up behind it, he wasn't driving— oh, probably over forty—forty-five miles per hour, we got up behind him, I don't know just what street it was and observed him for, oh, I'd say a block or so before we stopped him.

"Q. How was he driving at that time? A. It wasn't in a straight line, but it wasn't in an erratic manner either. It was just a kind of a gradual from one lane to the other. It wasn't really a whipping motion, it was just a kin of a gradual—he didn't run over any curbs or anything but it was a gradual weave.

"Q. All right, at that point is that a two lane road on each side going each direction? A. Yes, sir, it is.

"Q. And was he staying in either of the two lanes? A. No, sir, he would go from one lane to the other. He didn't get clear over to the curb on either side, but his driving wasn't in either lane at that time.

"Q. Now, you say you stopped the defendant? A. Yes, sir, that's correct.

"Q. And, how did you got about it? A. We pulled up beside him and turned the siren and he pulled on over to the side of the road."

He also testified on cross-examination as follows:

"A. When I passed the Sheriff's car and got between the Sheriff's car, there was a slight weaving motion from one lane, from the east lane for south bound traffic to the west lane, and then back into the west lane, and by that time, it had been a block or so and I decided that I would stop him, which I did.

"Q. Now, this slight weaving motion that you're talking about, what do you mean by a slight weaving motion? A. I mean he wasn't running up on one curb and down on to the other.

"Q. In other words, any car travelling along a highway, particularly an old car will have a slight weaving, isn't that right, Mr. Patrolman? A. Not completely from one lane to another one.

"Q. I know, but this is on a four lane highway, there's two lanes? A. That's right.

"Q. And there will be a slight weave on any old car, won't there? A. Not necessarily, no.

"Q. Well, more than likely there is, isn't there? A. There could be.

"Q. And ordinarily is, isn't there? A. Not necessarily, no, sir.

"Q. But quite frequently there is, isn't there? A. Not without cause.

"Q. Any old car will tend to slightly weave on the highway, won't it? A. It could be.

"Q. Now, on the basis of this slight weaving on this four lane highway, you stopped and arrested this defendant, is that correct? A. Not for his weaving, he was not arrested for his weaving.

"Q. Well, what was he arrested for? A. Driving while intoxicated.

"Q. Well, did you know that he was intoxicated when you stopped him? A. No, sir, I did not.

\* \* \* \* \* \*

"Q. Then the only reason that you arrested him was because he was intoxicated, is that correct? A. Yes, sir, I believe that's the charge.

"Q. That's the charge, but you didn't know he was intoxicated, did you? A. Not when I stopped him, no, sir."

The testimony of Deputy Sheriff Vaschel Sowell is in drastic conflict with that of the other officers and the court is inclined to disregard at least a portion of said testimony as it pertains to the distance under which defendant was being observed.

The sheriff testified the patrol car pulled up beside him. That he motioned to the car and the patrol stopped the defendant by pulling in front of him in a matter of seconds. The patrolman testified it took approximately a block or so. Witness Sowell testified they followed defendant for half a mile. Also that defendant's car was weaving on the road.

A careful study reveals that the most vital question to be determined is whether the facts as reflected by the record justifies the officers in making the arrest without a warrant. Had defendant committed a crime in the presence of the officers at the time they sounded their siren and made overt acts to stop the defendant, did they have sufficient cause to justify the arrest of the defendant?

When an officer can lawfully make an arrest in absence of a warrant is clearly set forth in Title 22 O.S.A.1951 § 196:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has a reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

In order for the arrest in the instant case to have been lawful, it would be imperative that it came within the category of one of the above exceptions to an arrest without a warrant. It can well be conceded that the officers had no warrant. They neither suspected that he had committed a felony, nor had he been so charged. There can be no question but what the state relied upon the testimony of the arresting officers to bring the arrest within subd. 1, in that a public offense was committed in their presence. In the opinion of this court, the evidence on the part of the arresting officer, if believed, fell far short of establishing that the defendant was committing or attempting to commit a misdemeanor in their presence, and that witness Kilgore, who was in the best position of all to observe, testified most convincingly that it would have been physically impossible for the arresting officers to have surveilled or observed defendant's manner of driving after they were signaled by Kilgore as to defendant's car, as he testified "the Patrol then pulled in front of defendant's car and stopped him, all of which took a matter of seconds." The officers' only justification for the arrest without a warrant was that the defendant was driving on the left side of the lane of traffic in which he was travelling. Bear in mind this was a four-lane drive with a center

section dividing the north and south traffic. The patrolman further testified "there was a car in front of defendant, not immediately, but some 2 or 3 hundred yards, and position of defendant's car within itself was not unusual." (CM 62), and that he did not know whether defendant was getting ready to turn or not. The other evidence presented by arresting officers was to the effect that there was a slight weaving motion not completely from one lane to the other. In this connection, the court is unable to ascertain the violation of any of the statutes of this state if everything the arresting officers testified was true. It is not uncommon for automobiles travelling a four lane highway with two lanes reserved for each direction to drive in one or the other and certainly does not violate any of the state's laws to be in the left lane next to the median for purposes of preparing to pass a vehicle or for the purpose of turning.

The officers described the weaving "as slight and not erratic." There was no evidence as to the conditon of the road or the mechanical condition of the vehicle or the extent of the alleged weaving, or how far it continued.

This court will guard carefully against subterfuge and has in previous cases held that slight or minor infractions as justification of arrest without a warrant will be treated as subterfuge.

In Barnett v. State, 94 Okl.Cr. 293, 235 P.2d 555, 556, this court said:

"Where highway patrolmen forcibly restrain operator of motor vehicle for sole reason that he was exceeding alleged forty-five miles per hour speed limit and search the vehicle without a warrant, discovering contraband liquor, the court will treat the actions of the officers in making the arrest for alleged driving in excess of speed limit as a subterfuge, where the facts show that defendant was not guilty of reckless driving * * *".

Also it was said in Johnson v. State, 92 Okl.Cr. 63, 220 P.2d 469, 472:

"The fact that defendant might have crossed the center line of the highway a few inches during the drive was merely used as a subterfuge by the officers to cover up their determination to search defendant's car."

In the present case, the officers specifically testified he did not arrest defendant for weaving, but arrested him for driving while intoxicated.

This court in Saltsman v. State, 95 Okl. Cr. 228, 243 P.2d 737, 739, passed upon a case so identical that the opinion could be completely copied herein. The facts were identical. The testimony of the arresting officers would have been interchangeable with the instant case. In that case, the facts reveal: Saltsman was a resident of Eufaula. On the night in question Saltsman left Eufaula on his way to McAlester 30 miles south. A Eufaula officer advised the Highway Patrol by radio to be on the lookout for a car answering the description of the defendant's car. The vehicle was thought to have been driven by a person under the influence of alcohol. Three troopers in answer to the message proceeded north of McAlester and intercepted defendant's car. They turned around and pursued defendant, recognized the tag number given them by Eufaula police. Officers followed defendant a short distance, turned on their red light, sounded siren and stopped defendant, placing him under arrest. They testified defendant, while being followed, exceeded city speed limit and was weaving on the highway. Saltsman was convicted and appealed. The case was reversed by this court. The court said:

"Facts to support the conclusion of arresting officers that a misdemeanor is being committed in their presence must be shown by evidence and be sufficient to justify an arrest without a warrant, and if evidence to support conclusion is not sufficient, the arrest cannot be made valid and cannot be justified by what it finally exposes."

Judge Powell, in the Saltsman case, further said:

"The evidence is conclusive that the highway patrolmen when they were notified that a person driving a described car south along U. S. Highway No. 69 was 'thought to be intoxicated', responded promptly. They knew, however, that the law violation suggested by the message, if in fact true, constituted a misdemeanor, and that not having a search warrant they could not ipso facto stop the car being driven by the subject and investigate unless they were able to conclude from the personal demeanor and actions of the driver, and the manner that he handled his car as he moved along, such as driver slumping on the wheel, yelling, speeding or reckless manner of operation, that he was in fact intoxicated; or a least discover some law violation as might be committed in their presence. They could not arrest the driver for some misdemeanor committed by him in the presence of their informer prior to the time he came in sight of them. Lyons v. Worley, 152 Okl. 57, 4 P.2d 3. The arrest cannot be justified by what it turned up. It must have been justified at its commencement."

It is obvious in the case at bar that the officers acted in response to the radio call of Sheriff Kilgore. They evidently proceeded to the location, intercepted defendant's vehicle, which filled the description given them by Kilgore, turned around, and in compliance with Kilgore's signal, stopped defendant and arrested him. And little doubt could remain that defendant was arrested upon evidence supplied by the informer Kilgore. It is well to bear in mind that Kilgore could have made the arrest upon what he observed if not as a sheriff of another county, as a private citizen and would have been thoroughly within his rights, but instead, he informed the highway patrol by radio, and played no part in the arrest. Information obtained by officers from third person as to commission of misdemeanor does not justify arrest or search. This rule is well stated in 6 C.J.S. Arrest § 6, p. 596(4):

In absence of a statute to the contrary, a peace officer without a warrant, on mere suspicion that he committed a misdemeanor cannot make a lawful arrest.

Also, this rule is affirmed by this jurisdiction in the Saltsman case, supra, and Lyons v. Worley, supra.

▇ After consideration of the evidence in the case before us, and the previous decisions of this court, we are of the opinion the evidence obtained by this unlawful arrest should have been excluded upon the objection of defense counsel and error was committed by the trial court in not so doing. The Attorney General in his brief raises the question that defendant did not file a motion to suppress and thereby fell within the category of previous holdings of this court, such as McGilvery v. State, 50 Okl.Cr. 376, 298 P. 312, and Keeler v. State, 24 Okl.Cr. 206, 217 P. 228, wherein the court held:

"Where the defendant pleads to the merits of a criminal action he waives all objections to the illegality of his arrest."

A careful reading of these cases will reveal that they involve the illegal issuance of a warrant, an instrument in writing by which the state was bound. The irregularity of the warrant was noticeable upon its face and defendant thereby had knowledge that the state intended to rely thereon, and in that event, it was the duty of the defendant to raise its illegality forthwith and before invoking the court's jurisdiction by pleading thereto. Though this in certain circumstances may appear to be a harsh rule, it is always within the sound discretion of the court to permit a withdrawal of defendant's plea for the purpose of raising this question, and this court will reverse trial court if abuse of this discretion is shown. We do not feel that strict compliance with this rule is applicable to search and seizure without a war-

rant or evidence obtained thereby. Nor do we feel that the rule applies in a case where arrests are made without a warrant. To so hold would in numerous instances deprive defendant of his day in court. In may cases, the defendant would be unable to raise such objections until he had been fully advised by what virtue the officers based the justification of their arrest without a warrant. In the instant case it could not have been ascertained until the officers testified. Timely objections were made to any testimony obtained by virtue of the unlawful arrest. We are of the opinion the rule as laid down in Kelso v. State, 97 Okl.Cr. 215, 260 P.2d 864; White v. State, 81 Okl.Cr. 399, 165 P.2d 151, is applicable here:

> "An objection to evidence obtained by illegal search and seizure must be interposed at first opportunity and should be made either at beginning of trial by motion to suppress evidence or in course of examination as soon at it becomes apparent that state will rely thereon, and defendant failing to make timely objection waives right to be heard on such qeustions."

We are of the opinion defendant's objections were timely and should have been sustained by the trial judge.

There needs to be no discussion of defendant's second or third assignment of error unless additional evidence can be obtained as to the justification of the officers' right to arrest without a warrant. In that event, the court by all means, should give an instruction as requested by the defendant, designated as instruction No. 5 or to the effect that defendant could be found guilty either of the principal offense or as a second offender, and the punishment provided by law for each offense should be clearly set forth in the instructions. For support of this contention, see Rice v. State, 60 Okl.Cr. 398, 64 P.2d 1240, 1241; 25 Am.Jur. 280(35); 58 A.L.R. 98; 116 A.L.R. 236; 139 A.L.R. 697. The necessity for such an instruction may be eliminated by a stipulation by defendant as to the previous conviction. But as a matter of precaution the better policy would have been to so instruct.

The case is hereby reversed and remanded. If the prosecution can obtain sufficient evidence to show defendant was committing or attempting to commit a public offense in the arresting officer's presence, then said cause should be retried, but unless additional evidence is obtained, said case is to be dismissed.

BRETT, P. J., and POWELL, J., concur.