John Q. AKERS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12539.

Criminal Court of Appeals of Oklahoma.

March 19, 1958.

Alvin C. Bruce, Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The plaintiff in error, John Q. Akers, hereinafter referred to as the defendant, was charged by information in the county court of Carter County with the crime of

operating a motor vehicle while under the influence of intoxicating liquor. He was tried before a jury, found guilty and sentenced to serve 30 days in the county jail and to pay a fine of $250.

The defendant relies, for reversal, upon three assignments of error:

1. That the trial court erred in refusing to sustain defendant's demurrer to the evidence and motion for directed verdict of not guilty.

2. Errors of law which occurred during the trial and which were duly excepted to by defendant.

3. That the punishment assessed against the defendant is excessive, under the facts in the case.

In discussing the first assignment of error it is necessary to refer briefly to the testimony as reflected by the record. An accurate account as to the facts is stated in the state's brief as follows: Dick Pierce testified in substance that on May 9, 1957, he was working at Cal's Service Station in Ratliff. That about 11:30 that morning he saw defendant drive up the road and turn in at the station and stop to have his car serviced. He said Sidney Ross drove up about the same time. Witness testified that in servicing defendant's car he smelled whiskey. He said, "I couldn't say it was on his breath, but you could smell it." "I'd say he was drinking, but I couldn't say he was drunk." Witness further testified that he was present at the station upon arrival of the Highway Patrolman, Calvin Duncan. He said Mr. Duncan searched defendant's car and took two bottles of whiskey out from under the front seat.

Sidney Ross, Justice of the Peace, Graham Township, Carter County, testified in substance that he first saw defendant on the morning of May 9th just east of the town of County Line. Witness said he was going east toward Ratliff in his pickup truck when defendant drove around him and caused him to go clear off the road. Witness said the defendant came almost hitting the left front bumper of his pickup. That he followed him on down the road and

defendant ran two other cars off the highway. That he followed him to Ratliff where defendant had pulled in at Cal's filling station. Witness said he pulled to one side and stopped and went over to defendant's car. That he could smell whiskey. The witness further testified:

"I said aren't you a little drunk to be driving your car. He said, 'No', and I told him it looked like he was, the way he was driving, that he'd run me and two others off the road.

"Did you smell anything, what did you smell? Whiskey." * * *

Then I asked him where he was headed for, and he said to Woodford to a funeral. I didn't think he looked like he was, he couldn't go to a funeral in that condition. Dick or Cal one asked him what time the funeral was and he told them 2 o'clock. I don't remember which one of them it was, but he said two. I asked him then if he knew anybody around there I could call and get them to drive him down to the funeral and he said he didn't know anybody around there at all. I told him if he'd go around there and rest or sleep a little while, I'd let him go on, but I sure wouldn't want to go to a funeral like that.

Witness said he asked defendant in a nice way to pull his car around to the side of the station where he could rest and sleep, and that he would wake him up and let him go on after he sobered up a little. Witness said one of the boys drove the car. Witness went into the station and got a coke and about ten minutes later he heard defendant's car backing out. He said he ran out there and told defendant he wasn't going anywhere. That he then took his car keys and went back into the station and called the Highway Patrol at Ardmore. That Patrolman Calvin Duncan arrived within 45 minutes or an hour and placed defendant under arrest and searched his car and took him to Ardmore.

On page 30 of the case made, witness further testified:

"You didn't ask him, and you didn't smell anything on his breath, did you?

"Whose? This boy right here.

"I sure did.

"Or was it in the car? His breath, I was right in his face when I walked up to the car.

"His face was redder, was it any redder than it is now? It was very much redder than yours is now.

"Very much redder? Yes."

Witness Ross further testified on rebuttal:

"Q. Did you form an opinion relative to the defendant's intoxication? A. Yes.

"Q. Would you tell the Court and jury whether or not he was intoxicated. Was he slightly intoxicated, moderately intoxicated, or highly intoxicated? A. I'd say he was very highly intoxicated."

On cross-examination the witness testified:

"Q. You held him there and it was 12:30 or 1:00 before Mr. Duncan got there, wasn't it? A. From the time I stopped him, it was around 45 minutes.

"Q. What was that? A. From the time I stopped him until Mr. Duncan stopped, it was about 45 minutes.

"Q. He stayed out there in his car? A. He was out a time or two, he got out and he'd get back in; he'd get out and tell me he wanted to talk it over. He wanted to reason it out or something."

\* \* \* \* \* \*

"Q. You weren't drinking anything, were you Judge? A. No, sir, I never took a drink of nothing in all my life, nothing alcoholic, and I'm 30 years old."

Calvin Duncan, highway Patrolman, testified in substance that he arrived at Cal's Service Station in Ratliff City some time about 11:45 a. m. or 12:00 o'clock noon. The defendant was sitting in his car at the filling station when Patrolman Duncan arrived. Witness said he told defendant he was under arrest for driving while intoxicated. He said the defendant had a strong odor of alcohol on his breath. That his face was red and he was very intoxicated. He said he found two half-pint bottles of whiskey, both of them nearly empty, under the front seat of the car. He took the two bottles to the county attorney's office. After the witness had identified the two bottles, they were introduced in evidence as State's Exhibits 1 & 2.

At the conclusion of the state's case, the defendant demurred to the testimony of the state and asked the court to direct a verdict of not guilty which was overruled by the trial court.

■■■ In view of the testimony of the state, we cannot agree with defendant's contention that the trial court should have sustained a demurrer. The evidence was sufficient, if believed by the jury to justify a verdict of guilty as charged. A demurrer to the evidence in substance admits the facts that the evidence tends to prove and if there is any competent evidence tending to prove the defendant committed the offense charged, the demurrer should be overruled. See Caido v. State, 7 Okl.Cr. 139, 122 P. 734; Jarman v. State, 57 Okl.Cr. 226, 45 P.2d 220. From a review of the testimony presented by the state, the trial court did not err in overruling defendant's motion, as to the demurrer or directed verdict, as they were equivalent in nature.

The defendant testified in substance that he was born and reared in Carter County, and at the time of the alleged offense, was living in Cement, Oklahoma, where he was a farm boss for the Deep South Oil Company. That prior to this time, he had never been in trouble in his life. That he is a family man with two boys. That on this particular date, in which he is charged with violating the law, he was proceeding from his home to Woodford, Oklahoma, to attend the funeral of his uncle, Dempsey Akers, a pioneer citizen of Carter County, and for whom Akers Township in Carter County is named. That he had not taken a drink on that date, but had had a few drinks the night before; the landowner of land where his company had brought in a well gave a party for the company, which is usually the custom; that he took his family to the

party and had a couple of small bottles of whiskey in his car, left over from the party. That when he got to Ratliff City, Oklahoma, he pulled into a service station for gas and oil, and the Justice of the Peace drove up and accused the defendant of running him off the highway. That after he paid the filling station attendant for his gas the JP ordered him to take his car around to the back of the station. After he was there some length of time, he started his motor and the JP grabbed his keys and left him setting there. After sitting there quite a length of time and knowing that he was going to miss his uncle's funeral, he became disgusted and started drinking out of the two bottles which he had in the car from the night before. In the meantime, the patrolman came and arrested the defendant and he had already drunk the whiskey that was in his car. That he told him his name, where he was going, inquired as to why he was being detained, and made the correct change in paying for his gasoline.

The defendant presented two witnesses, Joe Maddox and Harry Collins who testified his reputation was good.

█ This leads us to the second assignment of error which in substance contends that the arrest of the defendant and the search of his car was illegal. That the defendant was never placed under arrest by the Justice of the Peace. That the subsequent arrest by Patrolman Duncan was without warrant and no crime committed in his presence. The evidence shows that Patrolman Duncan was called by witness Ross after he had taken defendant's keys and detained him until the arrival of the highway patrol. This court is precluded from considering the merits of this contention as it was raised for the first time upon appeal. The court has examined this record carefully and the question of an illegal arrest or search was not raised by either a motion to suppress or during course of the trial, but for the first time upon appeal.

This court said in McMillon v. State, 95 Okl.Cr. 409, 247 P.2d 295, 297:

"The privilege of immunity against an illegal search and seizure is personal to the accused and is one which will be considered waived unless timely objection to the introduction of evidence is interposed, and supported by proof."

The court has adopted the rule as laid down in Kelso v. State, 97 Okl.Cr. 215, 260 P.2d 864:

"An objection to evidence as obtained by illegal search and seizure must be interposed at first opportunity and should be made either at beginning of trial by motion to suppress evidence or in course of examination as soon as it becomes apparent that state will rely thereon, and defendant failing to make timely objection waives right to be heard on such question."

Also see Moran v. State, 95 Okl.Cr. 6, 237 P.2d 920; White v. State, 81 Okl.Cr. 399, 165 P.2d 151.

The Attorney General cites in his brief the case of McGilvery v. State, 50 Okl.Cr. 376, 298 P. 312, wherein this court said:

"Where the defendant pleads to the merits of a criminal action, he waives all objections to the illegality of his arrest."

Though this court does not agree that this is the rule in every instance, as stated in Shirey v. State, Okl.Cr., 321 P.2d 981, we are in accord, that, if the matter is not raised by motion to suppress or by timely objection during course of trial it is waived and cannot be heard for the first time upon appeal.

█ From a careful review of the record we are of the opinion the defendant was given a fair trial. The facts were adequately presented to a jury. It was their responsibility to determine the facts from the testimony of both the state and defendants. We find nothing in the record to justify modification or reversal. It is therefore affirmed.

BRETT, P. J., and POWELL, J., concur.