**O. C. SHIRLEY, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12560.**

Criminal Court of Appeals of Oklahoma.

April 23, 1958.

Kelsie C. Beauchamp, Jr., Duncan, for plaintiff in error.

Clinton D. Dennis, County Atty., Marlow, Jerome Sullivan, Jr., Asst. Co. Atty., Duncan, for defendant in error.

NIX, Judge.

O. C. Shirley, plaintiff in error, hereinafter referred to as the defendant, was charged by information in the District Court of Stephens County with the crime of operating a motor vehicle while under the influence of intoxicating liquor, second offense, tried before a jury, found guilty as charged and the punishment left up to the court, who sentenced the defendant to 30 months or 2½ years in the State Penitentiary at McAlester, Oklahoma.

The evidence upon which the defendant was convicted was highly contradictory and a flagrant contrast was revealed between the testimony presented by the state and the defense. The arresting officer Massey testified as follows:

"A. I was driving south on 4th and approached the stop sign which was a four-way stop sign at that time; it's only a two way now, and I stopped at the stop sign and just as I stopped, there was a car approaching from the left at a high rate of speed and I just set there until I could see what the car was going to do and just before it got to the stop sign, it come sliding sideways with all the brakes on, sliding sideways, and I just set there until the car went through. It never did come to a complete stop and when it passed in front of me I saw there was something wrong with the driver.

"Q. Did you recognize him at that time? A. Yes, I did.

"Q. All right, what was he doing at that time? A. He was just lent way back in the seat swaying with the wheel, weaving and swaying with the wheel.

"Q. Then what happened? A. Immediately after he passed in front of me, I put my siren on and started after him and he made a swing plumb across the street.

"Q. What street was he on at that time? A. 4th. He turned south and on the extreme left of the road, or the street, and I got him stopped at the alley, the first alley past Magnolia.

"Q. Then what happened? A. I walked up to the car and—

"Q. What kind of a car was it? A. As well as I remember it was about a '48 or 50 Ford, something like that.

"Q. What color was it? A. It was a dark blue.

"Q. Was anyone else in the car with the defendant? A. No, sir, there was not.

"Q. What did you do at that time? A. I placed him under arrest.

"Q. What did you observe about him other than what you have already told the jury? A. I observed that he was drunk.

"Q. What makes you say that he was drunk? A. Well, the way he talked and the way he walked, he didn't have proper use of hisself. He was more or less staggery, couldn't stand up.

"Q. Did you notice any odor about him? A. Yes, sir.

"Q. What was that? A. It was alcohol.

"Q. Now, Mr. Massey, from your experience as an officer, did you form an opinion at that time as to whether he was drunk or sober?

"By Mr. Beauchamp: We object to that question on the grounds it is incompetent, irrelevant and immaterial and he hasn't been qualified to testify.

"By the Court: Overruled.

"A. Yes, sir, I saw that he was drunk.

"Q. In your opinion, he was drunk? A. Yes, sir.

"Q. Now, what did you do with him? A. I placed him in the City Jail.

"Q. Did you talk to anyone else about him or was anyone else present when you placed him in jail? A. Well, Lt. Beatty, radio operator, was there and one of the fireman, his name is Ritter, also."

Officer Massey further testified a search of defendant's car revealed a bottle containing approximately ½ pint of whiskey; that to the best of his knowledge he took the keys to said car and after placing defendant in jail returned and got the car and then turned the keys over to the police department with the defendant's personal belongings.

Bob Ritter testified he was a fireman and happened to be in the jail when Officer Massey brought in the defendant; that the defendant was staggering a little and acted peculiarly; that he smelled like he had intoxicants on his breath, and in his opinion he was under the influence of intoxicants. That as he recalled Massey was alone when he brought the defendant to the jail.

Officer Beatty testified he was on duty at the time defendant was brought in. That he asked if the defendant would voluntarily submit to an intoximeter test which he did, but was unable to blow up the balloon. Consequently, the test was incomplete and in his opinion defendant was under the influence of intoxicants. The Deputy Court Clerk was called as a witness and presented the record of two previous convictions for driving while under the influence of intoxicating liquor. The defense presented a number of witnesses to establish that defendant was not driving at the time of the arrest. Defendant testified that he was drinking heavily on said date and about 1:00, some three hours before his arrest, that a man by the name of Leonard Williams came to his house and defendant had Mr. Williams drive him to the home of the defendant's niece, then drove around and parked at a cafe where beer was sold. That after parking, the defendant went to sleep and was awakened by Officer Massey and taken to jail. He denied having driven the car at any time that day.

Leonard Williams testified that he arrived at defendant's home about 1:00 and was asked by the defendant to drive him to the home of his niece; that he did and later parked at the cafe and beer joint; that he took the keys and left the defendant in the car and went in the cafe. This was about 2:00 or 2:30. That he took the keys because defendant was drinking and he didn't think he should drive. Witness further testified that defendant did not drive the car while he was with him.

Mr. Taylor was called as a witness and testified he was an employee of Haliburton's and had been for three years, lived in Duncan and knew the defendant. That on the day the defendant was arrested he was on his way to the fruit stand to get some milk for his baby about 3:30 and he saw the defendant in his car asleep and that he stopped and went over to the defendant's car with the purpose in mind of getting the keys, but there were no keys in the car. He proceeded on to the fruit stand and returned to take defendant out of the car. The car was still there but the defendant was gone.

Fleet Stephenson was called by the defense who testified that he worked at the grocery store across the street from where the defendant's car was parked; that he saw them take the defendant out of the car and about 30 minutes later a wrecker came and picked up defendant's car. From this set of facts the defendant was found guilty as charged by a jury, but they could not agree on the punishment and left same to the trial judge. The defendant appeals to this court upon two assignments of error;

"1. That the court erred in failing to properly instruct the jury.

"2. That the verdict and judgment was contrary to the law and the evidence."

▬ Under defendant's first assignment of error, it is urged that the court should have instructed the jury that in case they did not find that the defendant had previously been convicted of driving while under the influence of intoxicating liquor,

then and in that event, they could find the defendant guilty of the crime of driving a vehicle while under the influence of intoxicants. (First offense.)

It is well to bear in mind that under Tit. 47 O.S.A. § 93, driving while under the influence of intoxicants constitutes a misdemeanor punishable by imprisonment in the county jail for a period of time not less than 10 days or more than 1 year, or a fine of not more than $500 and shall have his driver's license revoked for a period of 12 months. Said law further provides that any person found guilty of a subsequent offense under provision of this Act shall be deemed guilty of a felony and upon conviction therefor shall be punished by imprisonment in the state penitentiary for a period of time not less than 1 year and not to exceed five years, and a fine of not more than $1,000 and shall have his driver's license revoked for a period of 12 months. Where one is charged as having violated this statute after a previous conviction, it must be kept in mind that the accused is not being tried for the offense for which he was previously convicted, but is being tried for the principal offense with which he is charged. The only purpose which the previous conviction serves is to raise the grade and affect the penalty of the offense upon which he is being currently tried in case of conviction. Therefore, the jury is to determine as a question of fact whether or not the state meets its burden in proving the defendant guilty of the current charges, in the event they so conclude, then the jury for the purpose of determining the degree of punishment shall as a question of fact determine if the state had adequately proven the previous conviction. If it should be determined by the jury that the previous conviction had not been proven, they could return a verdict finding defendant guilty of the current offense and assess his punishment in compliance with the statutes as it pertains to a first offender. Since these matters are alleged and must be proven, they are facts for the jury to decide. The question as to the duty of the trial court to so instruct is not exacting a new one before this court. The question has been touched upon in the case of Shirey v. State, Okl.Cr., 321 P.2d 981, 988, wherein it was said:

"The court by all means, should give an instruction as requested by the defendant, designated as instruction No. 5 or to the effect that defendant could be found guilty either of the principal offense or as a second offender, and the punishment provided by law for each offense should be clearly set forth in the instructions."

The court further said:

"The necessity for such an instruction may be eliminated by a stipulation by defendant as to the previous conviction. But as a matter of precaution the better policy would have been to so instruct."

However, in that case, such an instruction was requested and refused and exception allowed. It is readily distinguished from the instant case in that the previous conviction was not admitted. In the instant case the evidence presented was adequate to establish the previous conviction and in addition thereto defendant took the stand and admitted the previous conviction as alleged in the information.

This matter was also before this court in the case of Daggs v. State, 317 P.2d 279, 281, where the defendant's counsel stipulated as to the previous conviction and also took the stand and admitted same. The court said:

"Moreover, the trial court, by no stretch of the imagination told the jury they could take the first offense as proved, but his instructions were clearly to the contrary. The defendant's contention that the trial court did not instruct the jury they might find the defendant guilty of the offense of the act of October 27, 1956, alone, would have some merit in a proper case. But, under this record, it would be contrary to the admitted facts to have so instructed the jury. In fact, it would

have been an invitation to the jury so to do."

Though this Court is ever conscious of the trial court's duty to instruct the jury upon all elements of law pertaining to the issues, we cannot feel that a failure to instruct the jury as to the proof upon an admitted fact would be prejudicial to the defendant. This court is satisfied that where the previous offense has not been stipulated to or admitted it is the duty of the trial court to instruct the jury, that in case the state failed to prove, to their satisfaction, that defendant had previously been convicted under Tit. 47 O.S.A. § 93, the jury may find the defendant guilty of current offense alone.

Defendant's second assignment of error asserting that the verdict was contrary to the evidence is by no means a frivolous contention. A thorough review of the records clearly reflects that the preponderance of the evidence is favorable to the defendant. The state's case wholly relies upon Officer Massey's testimony as to defendant driving while under the influence of intoxicants. There is no doubt as to the defendant having been guilty of public drunk, but the jury had to discard the testimony of all of the defendant's witnesses in order to find him guilty of driving a vehicle at the time of his arrest. The defendant's witness Taylor, witness Williams, and witness Fleetwood testified positively to circumstances which, if believed, would have disapproved the arresting officer's testimony. The defendant's testimony was corroborated by three persons; the officer's testimony by none.

■ From the record it is to be assumed the witnesses for the defense were substantial persons, why the jury chose to disregard their testimony and accept the officer's testimony is not within the province of this court to consider. We are governed by decisions too numerous to mention that where there is a conflict in the testimony, a question of fact is created for the jury to determine. They have the right to judge the witness and to weigh the evidence, and where there is any competent evidence to support their verdict, it will not ordinarily be disturbed. On the other hand, this court is vested with the duty of guarding and protecting the rights of all individuals whose destiny leads them to this bar. It is apparent from the record that the jury had a grave decision to make in casting aside and holding for naught the testimony of the defense and accepting the state's testimony in its entirety.

Even the jury had difficulty in this respect as they could not agree upon the punishment and left that phase of the case to the trial judge. If the testimony given by the defense was true, a grave injustice was created by the jury's verdict. However, since there was evidence upon which they could base their verdict, this court will not reverse their finding.

In view of the extreme conflict in the testimony and since the jury could not agree on the punishment, we feel that it would be in furtherance of justice to modify the sentence imposed by the trial judge from 2½ years in the State Penitentiary to 1 year in the State Penitentiary, and said cause is hereby modified to that extent and otherwise affirmed.

BRETT, P. J., and POWELL, J., concur.