Floyd Austin CATRON, Plaintiff in Error,

v.

CITY OF PONCA CITY, Oklahoma, a Municipal Corporation, Defendant in Error.

No. A–12721.

Court of Criminal Appeals of Oklahoma.
June 3, 1959.

Raymond A. Trapp, Blackwell, for plaintiff in error.

George W. Miller, Ponca City, for defendant in error.

NIX, Judge.

Floyd Austin Catron, hereinafter referred to as the defendant was convicted in the Municipal Court of Ponca City, Oklahoma, for violation of a city ordinance, to-wit: driving a motor vehicle while under the influence of intoxicating liquor. He appealed his case to the county court and was there tried before a jury who found the defendant guilty and left the punishment to be assessed by the court. The court fixed the punishment by directing the defendant to pay a fine of $10 and to pay the cost of the appeal.

The defendant lodged his appeal in due time in this court contending as his chief assignment of error that the court erred in not sustaining an objection to the admission of evidence discovered after the purported arrest to-wit: that the defendant was found to be intoxicated.

The case at bar arose from an arrest made on the city streets of Ponca City wherein the defendant was charged under a city ordinance for driving while under the influence of intoxicating liquor. The defendant contends that the officer had no right to stop him because he was not engaged in the violation of any law at the time he was stopped by the officer, nor was the officer equipped with a warrant of arrest. Therefore, any evidence discovered as a result of the illegal arrest was inadmissible and should have been excluded. The arresting officer, Cookerly, is to be commended for his frankness in answering questions propounded by the defense counsel, even though they were more favorable to the defendant than the state. He made no effort to utilize the weapon of subterfuge but reflected an honest desire to testify as to facts. He frankly admitted that defendant was committing no violation or offense in his presence but that the defendant was stopped as a result of suspicion. His testimony upon cross examination was as follows:

"Q. Mr. Patrolman; we'll have to go back over what we talked about a minute ago, for the sake of the record. You first observed this Buick car on Oklahoma entering First Street? A. Yes, sir.

"Q. It is required by law to stop at a stop sign? A. Yes, sir.

"Q. He did stop? A. He did stop, yes sir. He did.

"Q. He made a right hand turn? A. Yes, sir.

"Q. He made that in full compliance with the provisions of the City Charter and City Ordinances? A. I don't believe he made a signal of any kind. I believe there is an ordinance against that. However, he made a proper turn.

"Q. Are you sure whether or not? A. No, I'm not positive.

"Q. He was on the opposite side of you, it was night. A. Yes, sir.

"Q. Your ordinance requires him to stick out his hand, and you would not see the signal? A. Yes, sir, that's entirely possible.

"Q. You turned to go south? A. Yes, sir.

"Q. The speed limit in that area is what? A. 20 miles per hour.

"Q. Was he within the 20 miles per hour? A. Yes, sir. He was.

"Q. Did he drive in his lane of traffic? A. Yes, sir. He was on the righthand side of the road.

"Q. Your ordinance describes Jay Driving as driving on the wrong side of center. Now, he drove on the right

side of center? A. Yes, sir, that's true.

"Q. You noticed he appeared to be uncomfortable in his car? A. Yes, sir.

"Q. He was moving around? A. Yes, sir.

"Q. Now, at the time you stopped there and turned on your red light to stop him, Mr. Patrolman, what crime was he committing that you know of? Positive knowledge? A. I had no positive knowledge of any crime that had been committed.

"Q. He was not then, as far as you knew, of your own knowledge, in the exercise of all your senses, committing any offense when you stopped him? A. No, sir, but we have an ordinance against careless driving and the man could have been driving, it could have been classified in a careless manner.

"Q. What is your ordinance, other than Jay Driving which I was reading a minute ago? A. There somewhere is an amendment that on careless driving it states, I don't know exactly what the ordinance is, but it pertains to not being fully conscious of your automobile that you're driving, your mind wandering.

"Q. Would you say he was not fully conscious of his automobile? A. No, sir. I don't believe he was.

"Q. Did he endanger the property of anyone? A. I don't recall if there were any parked cars or not.

"Q. Did he endanger anyone walking across the street? A. Not that I recall. No sir.

"Q. Then, Mr. Witness, you did not stop him for the violation of any ordinance of Ponca City at the time you stopped him, did you? A. No, sir, I did not.

"Q. You stopped him because you had a suspicion that there might be a violation? A. That's true.

"Q. The only reason you stopped him was on the suspicion you had, is that right? A. That's true.

"By Mr. Trapp: Now I renew my objection to any evidence of anything seen or observed by this officer after he had stopped this man. I move that all the evidence as to what he saw and observed, heretofore testified to, be stricken from the record for the reason and upon the grounds that this man was not committing any offense this officer had any knowledge of in his presence. He arrested him on suspicion, and I have two court cases from the Criminal Court of Appeals precisely on that question.

"By the Court:

"Objection overruled.

"By Mr. Trapp:

"Exception."

The city produced witness Strather who was present at the police station when defendant was brought in by Officer Cookerly. Upon being asked what he observed as to the manner of walking and general demeanor of defendant at that time and place, defense counsel made the following objection which was overruled by the trial judge with comment as follows:

"By Mr. Trapp:

"Comes now the defendant and objects to the testimony of this officer as to anything he saw or observed relative to the defendant upon the grounds and for the reason that the arrest of the defendant was illegal, not arrested in the commission of any offense within the presence of the officer making the arrest, to his knowledge, and the testimony of this witness was derived from that illegal arrest.

"By the court:

"I think that objection would be good if this case were a County Court case and originally brought in this Court, but this case is an appeal from Municipal Court and the objection is overruled."

Over the objection of defense, the witness was permitted to testify that defendant was, in his opinion, intoxicated.

 The question to be determined is whether the testimony of the officer as reflected by the record justify his making the arrest without a warrant. Had defendant committed a crime in the presence of the officer at the time the officer made overt acts to stop the defendant, and was there sufficient cause to stop the defendant under the laws of the state when not equipped with a warrant of arrest?

It is well established that in order for an arrest to be valid and the evidence obtained thereby to be admissible, the arrest must fall within the provisions of the statute relating the exception to arrest without a warrant. When an officer may arrest without a warrant is clearly set forth in Title 22 O.S.1951 § 196:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has a reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

For any arrest without a warrant, to be valid, it must fall within one of the above categories. It is agreed that the officer had no warrant. Defendant was not suspected of having committed a felony, nor had he been so charged. The state no doubt relied upon the testimony of the arresting officer to bring the arrest under § 1, in that a public offense was being committed in the officer's presence.

His testimony was not sufficient to establish that defendant was attempting or had committed a misdemeanor in his presence. The officer frankly admitted he stopped defendant upon mere suspicion, and that his attention was directed toward the defendant because he appeared to be uncomfortable in his seat and had on a uniform type clothing and that he may have been driving in a careless manner.

The rule of arrest in such cases is well stated in 6 C.J.S. Arrest § 6(4), p. 596,

"* * * in the absence of a statute to the contrary, a peace officer has no power to arrest a person, without a warrant, on mere information of a third person, or mere suspicion, that he committed a misdemeanor."

Also, see Lyons v. Worley, 152 Okl. 57, 4 P.2d 3. This court has stated the rule in the case of Saltsman v. State, 95 Okl.Cr. 228, 243 P.2d 737, 739:

"Facts to support the conclusion of arresting officers that a misdemeanor was being committed in their presence must be shown by evidence and be sufficient to justify an arrest without a warrant, and if evidence to support conclusion is not sufficient, the arrest cannot be made valid and cannot be justified * * * by what it finally exposes."

Also see Shirey v. State, Okl.Cr., 321 P.2d 981.

No doubt the trial judge in the case at bar was familiar with these authorities and others in this and other jurisdictions when he said:

"I think that objection would be good if this case were a county court case and originally brought in this court, but this case is an appeal from municipal court and the objection is overruled."

This court is of the opinion that the constitutional rights of a person are just as precious in one court as another and the fact that it was an appeal from the municipal court would not disrobe defendant of his rights under the law as to illegal arrests.

The holding that such a feeble reason as suspicion would justify a stopping and

searching would mean that all travelers on the highway would hazard such treatment, for who among them would not be guilty of appearing uncomfortable in driving and be dressed in unusual appearing wearing apparel. All, therefore, could be subjected to inconvenience, ignominy, and embarrassment on the excuse that an occasional incident might yield some contraband or evidence of some other offense.

After repeated decisions of this court, every well informed officer should know that arrests of motorists may not be lightly made and that if evidence gained from a search is to be properly introduced and a judgment founded thereon is to withstand the legal assaults upon it, likely to be made, the guarantees of the constitution must be honored. However zealous an officer may be to stamp out the evils of crime, he cannot throw caution to the wind on the fallacious theory that the ends justify the means. An illegal arrest cannot be validated by the fruit it produces.

A recent California case handed down by the Superior Court of California, Sonoma County, June 6, 1958, People v. Knight, said:

"The argument of the difficulty of enforcing the law demands a breakdown of constitution guarantees of freedom, but if such argument were justifiable it would certainly be permissible to stop every vehicle on the highway without probably cause, to investigate whether the driver was intoxicated upon the theory that many people drink and drive—I do not agree with this position and so hold."

In the instant case the defendant was the object of an illegal arrest and the evidence discovered as a result thereof was inadmissible and the court should have sustained the objection.

■ The defendant's second contention of error is without merit. He advances the argument that the complaint was wholly insufficient. Apparently it was a traffic ticket so designed as to also serve as a complaint. No doubt this type of complaint is short of an example. However, the defendant waived his right to complain by pleading to the same.

Where the irregularities are noticeable upon the face of a purported complaint, objection should be made prior to a plea. To plead to said complaint is to waive any objection as to its invalidity. McGilvery v. State, 50 Okl.Cr. 376, 298 P. 312; Keeler v. State, 24 Okl.Cr. 206, 217 P. 228. A thorough review of the Shirey case, supra, 321 P.2d at page 987, is of interest in the application of this rule. Because of the sufficiency of the first assignment of error it is needless to comment further on other assignments of error.

The case in accordance with the decision herein recited is reversed with instructions to dismiss.

POWELL, P. J., and BRETT, J., concur.