The STATE of Oklahoma, Appellant,

v.

Rex Everett GILWORTH, Jr., Appellee.

No. O-74-841.

Court of Criminal Appeals of Oklahoma.

Feb. 19, 1975.

Preston A. Trimble, Dist. Atty., Reginald D. Gaston, Asst. Dist. Atty., Lynn C. Rogers, Legal Intern, for appellant.

L. Dee Oliphant, Floyd, Oliphant, & Bauman, Norman, for appellee.

## OPINION

PER CURIAM:

This is an appeal from the District Court, Cleveland County, styled The State of Oklahoma versus Rex Everett Gilworth, Jr., hereinafter referred to as defendant, Case No. CRF–74–368, wherein The State of Oklahoma under authority of 22 O.S. 1971, § 1053 has appealed to this Court from an order of the trial court sustaining the defendant's motion to suppress evidence by reason of an unlawful arrest. Thereafter, upon motion of the State for want of sufficient evidence without that which was suppressed, the case was dismissed.

Briefly stated the facts surrounding the arrest are as follows. On the afternoon of June 12, 1974, a train derailed near Interstate Highway 35 and Indian Hills Road, Cleveland County, resulting in the release of a toxic gas. At approximately 11:30 p. m. on this same date Officer Art Divecchio, Norman police officer, was in the vicinity of Steed Road, a rural area located on the northwest side of Norman, Oklahoma and west of Interstate Highway 35 and approximately three miles from the site of the train wreck on Indian Hills Road. Officer Divecchio testified to the following facts surrounding the arrest:

"Q. Did you have an occasion on or about the twelfth day of June, 1974 to see this particular individual that you just pointed out?

"A. Yes, sir.

"Q. Where was that?

"A. It was around Steed Road.

"Q. And where is that? In what city, county, and state is that located in?

"A. The City of Norman, Cleveland County, Oklahoma.

"Q. Approximately what time of day was this?

"A. Approximately 11:30.

"Q. What were you doing in that area at that time?

"A. I was patrolling for looters in the area.

"Q. And . . .

"A. And evacuating residents.

"Q. Why was that?

"A. There had been a train derailment in the vicinity, and there was a toxic gas that was in the area, and we had been given instructions to evacuate all the residential area. We had been given orders that the area had been evacuated, but there had been a report of looters and that we were to have preventive patrol.

"Q. And what type of vehicle were you in at that time?

"A. A Norman Police Department patrol unit.

"Q. And how is it marked?

"A. It has two overhead red lights and a siren and the words 'Police' on the back and both sides.

"Q. All right, how were you dressed?

"A. In a uniform.

"Q. Whenever you saw the Defendant, what was he doing?

"A. He was in a vehicle going down the road.

"Q. Okay, and what did you do at that time?

"A. I thought they were acting a little . . .

"Q. Well, what did you do, please?

"A. Okay, I fell in behind and turned on my overhead lights and stopped them.

"Q. Okay, why did you do that?

"A. Because that area, supposedly, had been evacuated. There was no one in the area that belonged there.

"Q. Okay, and what did you do after you had stopped the Defendant's vehicle?

"A. I radioed my location. I approached the vehicle and asked the driver to step from the vehicle and show me some kind of identification.

"Q. All right, and who was the driver of the vehicle?

"A. Steve Burnett, I believe.

"Q. And where was the Defendant in the vehicle?

"A. He was in the righthand, front passenger seat.

"Q. Okay, when the driver stepped from the vehicle, what occurred?

"A. I saw the subject . . . he was crowded over in the right seat laying on his left hip with both legs stuck in front of a tape deck . . . cassette or tape deck holder, and I saw bags that looked like zip-lock bags, or something of that sort, sticking up with a substance in them.

"Q. Would you describe the substance, please?

"A. A green, grassy substance that I associated with marijuana."

On cross-examination Officer Divecchio testified:

"Q. Okay. Then you had, other than the fact that these people were out there on a dirt road where you had been told that people were not supposed to be, you had no reason to stop and arrest these individuals.

"A. Other than my instructions, no, sir."

The record further reveals that the District Attorney and defense attorney entered into a written stipulation that if Harry Tower, Norman Civil Defense Director, were called to testify, he would testify that the only official evacuation from the time of the train wreck until approximately 3:40 a. m. the following morning was the Indian Hills Trailer Park, located immediately west of the site of the train wreck.

The sole question to be answered by this Court is whether or not the initial stop of the automobile in which the defendant was a passenger was lawful and whether the evidence (marijuana) seized as a result was suppressible.

In order for an arrest to be valid and the evidence obtained thereby to be admissible, the arrest must fall within the exception to arrest without a warrant. When an officer may arrest without a warrant is clearly set forth in 22 O.S.1971, § 196:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

See, Catron v. City of Ponca City, Okl.Cr., 340 P.2d 504 (1959).

In the instant case the arresting officer had no warrant, the defendant was not suspected of having committed a felony, nor had he been so charged; and the evidence does not reveal that a public offense was being committed in the officer's presence.

We therefore must conclude that the initial stop of the automobile in which the defendant was a passenger was unlawful and the contraband seized as a result was not admissible. See, Catron v. City of Ponca City, supra, Shirey v. State, Okl.Cr., 321 P.2d 981 (1958) and Greene v. State, Okl. Cr., 508 P.2d 1095 (1973). Had the initial stop occurred in the evacuated area or on the outer fringes with the automobile attempting to enter the evacuated area, our conclusion would have been different.

Judgment affirmed.